CRAWFORD ET AL., APPELLANTS, *v.* EUCLID NATIONAL BANK, APPELLEE.

[Cite as Crawford *v.* Euclid Natl. Bank (1985), 19 Ohio St. 3d 135.]

(No. 84-1526—Decided October 2, 1985.)

136

*Kraig, DeWolfe & Pasz* and *Kerry B. DeWolfe,* for appellants.

*Hertz, Kates, Friedman & Kammer* and *Karl D. Kammer,* for appellee.

*Per Curiam.* In the first paragraph of the syllabus in *Bruck, supra,* this court stated that "[a]s a general rule no suit will lie for the malicious prosecution of a civil action, where there has been no arrest of the person or seizure of property."

The plaintiffs-appellants submit that one who has been required to deposit funds in an escrow account and accept a less favorable mortgage rate has sustained a sufficient seizure of property to establish a *prima facie* cause of action for malicious prosecution, assuming all other elements of the tort are also present. Appellants contend that the requirement that they deposit $4,500 in an escrow account is analogous to the effect of a temporary restraining order, in that they were deprived of control over their property by virtue of the defendant-appellee's pursuit of the prior lawsuit which was adjudicated in their (appellants') favor.

The appellee contends there was no seizure of property by it, even if one were to assume there was a seizure, since the savings and loan was the one requiring the escrow deposit. Appellee further argues that in any event, the escrow deposit cannot be viewed as a seizure since this deposit was established merely as security for a possible judgment against appellants, and could not be characterized as a seizure. Appellee submits that no one compelled appellants to buy a new home or take out a loan, and that the appellants' recourse would be to shop around for better loan terms. Finally, appellee submits that the *Bruck* case requires a seizure by the appellee and not a third party.

Our review of the foregoing arguments, along with the facts and circumstances underlying the cause *sub judice,* leads us to conclude that appellants have failed to allege a seizure of property as required under the *Bruck* decision. We find, as did the court of appeals below, that appellants have not alleged a seizure of property, but, rather, only damage to their credit rating which entailed a voluntary and knowing deprivation of property by their placement of funds in escrow and settling for less favorable mortgage terms. While it is clear that appellee cannot be said to have actually seized appellants' property, we also find that there was no constructive seizure of property, inasmuch as the placement of funds in escrow was undertaken voluntarily by appellants.

Having determined that there was no seizure of appellants' property by appellee as required by *Bruck,* our inquiry turns to the issue of whether this court should abandon the "English Rule" requirement of seizure of property or arrest of the person for malicious prosecution actions in Ohio, as enunciated in *Bruck, supra.*

The appellants contend that this court should overrule the *Bruck* deci-

sion and the so-called "English Rule" of malicious prosecution actions in the civil context, and join the "modern trend" of authority which does away with the seizure-of-property or arrest-of-the-person requirement. Appellants submit some thirty jurisdictions have abandoned this requirement in favor of the Restatement or "American" standard because the reasons underlying the "English Rule" are no longer persuasive. See, *e.g., Kauffman* v. *A.H. Robins Co.* (1969), 223 Tenn. 515, 448 S.W. 2d 400; and *Bollinger* v. *Jarrett* (1965), 146 Mont. 355, 406 P. 2d 834.

Appellee argues in favor of retaining the "English Rule" and *Bruck* by noting that among those jurisdictions which continue to adhere to the "English Rule" are the large industrial states which, by both population and volume of litigation, are continually involved in all aspects of commercial law, and are more attuned to the realities of the business world and the concepts and reasoning which support the traditional rule. Appellee further submits that the appellate court below succinctly set forth the policy justifications underlying *Bruck* and the "English Rule," as follows:

"* * * [I]t certainly may be said that public policy will not tolerate a scenario where a potential litigant is deterred from utilizing the courts to resolve legal disputes for fear of reprisal via a counter suit for malicious prosecution. Indeed, public policy supports free, unhampered access to the courts for litigants, as well as swift resolution of legal disputes. Abandoning the 'strict' rule requiring an arrest of the person or a seizure of his property would not serve these compelling facets of public policy. Adherence by Ohio courts to the rule requiring a seizure of property or arrest of person is of lengthy tradition, not to be cast aside lightly. The rule, contrary to the suggestion of the appellant[s], cannot be said to adversely affect the judicial process by allowing courts to be used as instruments with which to maliciously injure others. Rather, the rule simply assures that only the truly aggrieved who have suffered a substantial deprivation not of their own doing will institute such actions, bringing swift resolution to legal disputes in the interest of judicial economy. * * *"

In *Perry* v. *Arsham* (1956), 101 Ohio App. 285, 287 [1 O.O.2d 266], the court pointed out that the arguments which lend substantial credence to the "English Rule" are that (1) "costs" are given as adequate redress; (2) courts should be free and open to all without fear of being sued in return; (3) freely permitting malicious prosecution actions would make litigation interminable; and (4) defendant should have no right to a malicious prosecution action, since plaintiff has no action if a defense is malicious and groundless.

Our review of the cases from other jurisdictions, as well as the decisions rendered in Ohio,[1] convinces us that the *Bruck* decision and the "English Rule" it embodies are cogently justifiable in today's society.

---

[1] See, also, *Avco Delta Corp.* v. *Walker* (1969), 22 Ohio App. 2d 61 [51 O.O.2d 122]; and *Delk* v. *Colonial Finance Co.* (1963), 118 Ohio App. 451 [25 O.O.2d 161].

Unlike other areas of the law that are in need of revision in view of the changing demands of modern society, we find that the requirement of an arrest of the person or seizure of property in malicious prosecution actions is necessary, as a matter of public policy, to dissuade the multiplicity of counter-suits that could occur in the absence of such a requirement. In any event, we find that the facts of the instant cause do not warrant an abandonment of this traditional doctrine.

The elements necessary in order to maintain an action for malicious prosecution in Ohio were most recently set forth in our decision in *Kelly* v. *Whiting* (1985), 17 Ohio St. 3d 91, 94. *Cf. Border City S. & L. Assn.* v. *Moan* (1984), 15 Ohio St. 3d 65.

In reaffirming the validity of this and other precedents heretofore explored, we hold that in order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: (1) malicious institution of prior proceedings against the plaintiff by defendant, *Woodruff* v. *Paschen* (1922), 105 Ohio St. 396; (2) lack of probable cause for the filing of the prior lawsuit, *Melanowski* v. *Judy* (1921), 102 Ohio St. 153; (3) termination of the prior proceedings in plaintiff's favor, *Levering* v. *National Bank* (1912), 87 Ohio St. 117; and (4) seizure of plaintiff's person or property during the course of the prior proceedings, *Bruck, supra;*

Therefore, based upon all of the foregoing, we affirm the judgment of the court of appeals.

*Judgment affirmed.*

SWEENEY, LOCHER, C. BROWN and WRIGHT, JJ., concur.

HOLMES, J., concurs in judgment only.

CELEBREZZE, C.J., and DOUGLAS, J., separately dissent.

CLIFFORD F. BROWN, J., concurring. I concur in the excellent analysis made by the court in this case and in the judgment, but I firmly believe we should have adopted the holding of the opinion in syllabus form as follows:

"In order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: (1) seizure of plaintiff's person or property during the course of the prior proceedings; (2) malicious institution of prior proceedings against the plaintiff by defendant; (3) lack of probable cause for the filing of the prior lawsuit by defendant; and (4) termination of the prior proceedings in plaintiff's favor. (*Cincinnati Daily Tribune Co.* v. *Bruck* [1900], 61 Ohio St. 489; *Woodruff* v. *Paschen* [1922], 105 Ohio St. 396; *Melanowski* v. *Judy* [1921], 102 Ohio St. 153; and *Levering* v. *National Bank* [1912], 87 Ohio St. 117, approved and followed.)"

To adopt a syllabus in any case a vote of four justices for the proposed syllabus is required. Only the votes of Justices Sweeney, Locher and Brown supported the foregoing paragraph as syllabus.

CELEBREZZE, C.J., dissenting. I respectfully dissent from the majority's "return to the thrilling days of yesteryear." "Recently, this court set forth in succinct clarity the three necessary elements of malicious prosecution in the *per curiam* opinion of *Border City S. & L. Assn.* v. *Moan* (1984), 15 Ohio St. 3d 65. We observed that in order to prove the tort of malicious prosecution, '[i]t will be incumbent upon appellant to establish that these lawsuits were instituted maliciously, without probable cause, and, as a general rule, were terminated in appellant's favor.' *Id.* at 66." *Kelly* v. *Whiting* (1985), 17 Ohio St. 3d 91, 254 (Celebrezze, C.J., concurring).

In today's decision, the court adds an archaic requirement that the plaintiff also prove a "seizure of plaintiff's person or property during the course of the prior proceedings."

The few Ohio cases which recognize this ludicrous requirement trace their lineage to *Cincinnati Daily Tribune Co.* v. *Bruck* (1900), 61 Ohio St. 489, which holds at paragraph one of the syllabus:

"As a general rule no suit will lie for the malicious prosecution of a civil action, where there has been no arrest of the person or seizure of property."

In apparent blind obedience, the majority follows *Bruck,* which it believes reflects "the so-called 'English Rule' of malicious prosecution actions in the civil context."[2] The majority reasons, without citing any supporting authority, that America's large states "which, by both population and volume of litigation, are continually involved in all aspects of commercial law, and are more attuned to the realities of the business world and the concepts and reasoning * * * support the traditional rule." In support of such a conclusion, appellee draws the court's attention to stale decisions such as *Schwartz* v. *Schwartz* (1937), 366 Ill. 247, 8 N.E. 2d 668, and *Publix Drug Co.* v. *Breyer Ice Cream Co.* (1943), 347 Pa. 346, 32 A. 2d 413.

---

[2] The "English Rule" was created by the judiciary following the enactment of the Statute of Marlbridge (52 Hen. III) in 1269. The statute enabled the successful defendant in the original maliciously prosecuted action to recover his costs in that same action. The courts also allowed damages in a subsequent action only when there was an arrest or seizure of property. 52 American Jurisprudence 2d (1970) 191, Malicious Prosecution, Section 9.

Interestingly, Great Britain no longer requires an arrest or seizure in the previous proceedings (civil or criminal) as a prerequisite to bringing a malicious prosecution action. England long ago rejected our majority's so-called "English Rule." See 25 Halsbury's Laws of England (3 Ed. 1958), at 348 and 367. Rather, "[a] plaintiff must expressly state in his statement of claim (1) the previous proceedings of which he complains; (2) that in so far as they were capable of so doing they terminated in his favor; (3) that there was no reasonable and probable cause for the defendant instituting or carrying on those proceedings; (4) that the defendant was actuated by malice; (5) that he has suffered damage * * *." *Id.* at 365 (references to footnotes omitted).

However, Illinois and Pennsylvania, on cursory examination, no longer support today's premise that an arrest or seizure is necessary.[3] The majority recognizes that most jurisdictions have abandoned the requirement in favor of the Restatement[4] or "American" standard. However, the majority apparently believes "backward" states such as Michigan, California, Florida, etc. are not in tune with today's policy considerations.[5]

---

[3] For example, the requirement of arrest or seizure to sustain a cause of action for malicious prosecution was specifically abrogated by the Pennsylvania Legislature in 42 Pa. C.S.A. Section 8351 enacted December 19, 1980. See *Dietrich Industries, Inc.* v. *Abrams* (Pa. Super. 1982), 455 A.2d 119, 122-123 and fn. 4.

Similarly, under Illinois law *today,* a complaint for malicious prosecution must allege five distinct elements: (1) institution of judicial proceedings by defendant; (2) lack of probable cause for those proceedings; (3) malice in instituting the proceedings; (4) termination of prior cause in plaintiff's favor; and (5) suffering by plaintiff of some special injury. *Lyddon* v. *Shaw* (1978), 56 Ill. App. 3d 815, 372 N.E. 2d 685.

"Special injury has been held to be that injury 'beyond the anxiety, loss of time, attorney fees, and necessity for defending one's reputation, which are an unfortunate incident of many (if not most) lawsuits.' " (Citation omitted.) *Doyle* v. *Shlensky* (1983), 120 Ill. App. 3d 807, 458 N.E. 2d 1120, 1129. Far from requiring an arrest or property seizure, Illinois only requires a showing that the plaintiff incurred special damages as a result of the maliciously brought proceedings.

In short, the conclusion reached by today's majority is void of support and empty of merit.

[4] Section 674 of the Restatement of the Law 2d, Torts (1977) 452, General Principle, states: "One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other from wrongful civil proceedings if:

"(a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and

"(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

The Reporter's note to this section states:

"Although the general principle in this Section was a minority rule at one time, it is now a clear and growing majority rule followed by some 30 states. With a few not entirely clear, they include Alabama, Arizona, Arkansas, California, Colorado, Connecticut, Delaware, Florida, Idaho, Indiana, Kansas, Kentucky, Louisiana, Maine, Massachusetts, Michigan, Minnesota, Mississippi, Missouri, Montana, Nebraska, New Hampshire, North Dakota, Oklahoma, South Carolina, South Dakota, Tennessee, Vermont, Virginia and West Virginia." *Id.* at Appendix, 438.

[5] Cf. *Antcliff* v. *June* (1890), 81 Mich. 477, 45 N.W. 1019 (It is "* * * not necessary, in an action for malicious prosecution of a civil suit, that the person should be molested or property seized, if it appeared that the suit was malicious, and without probable cause, and *the party has been injured or damaged thereby."* (Emphasis added.) *Id.* at 1022; *Bertero* v. *National General Corp.* (1974), 13 Cal. 3d 43, 118 Cal. Rptr. 184, 529 P. 2d 608 (Defendants reminded the California Supreme Court that malicious prosecution is not a tort favored by the law. "This convenient phrase should not be employed to defeat a legitimate cause of action. We responded to an argument similar to defendants' over 30 years ago, reasoning, '* * * we should not be led so astray by the notion of a "disfavored" action as to defeat the established rights of the plaintiff by indirection; for example, by inventing new limitations on the substantive right, which are without support in principle or authority * * * [Citation

I believe the *Bruck* rule is archaic, unduly harsh and, furthermore, not well-reasoned. It allows a suit for malicious prosecution in a case of a $10 seizure but denies relief for a party whose property was not seized but who nevertheless suffers a severe injury. As I noted in my concurring opinion in *Kelly, supra*: "While some courts have adopted such a fourth element, see dissent in *Border City, supra*, at 67, in my opinion the seizure of property or person merely concerns the extent of the plaintiff's damage, and its absence is not a bar to bringing an action. A contrary analysis could leave severely injured parties without a remedy and may in fact encourage tortfeasors to file malicious litigation knowing they are safe from recourse so long as they do not seize property or have their victim arrested."

Especially disturbing, as well as cruelly misleading, is the majority's comparison to our decision in *Border City* to help explain today's inclusion of a fourth element. By no stretch of the imagination does *Border City* lend support to today's result. In fact, the only reference to seizure or arrest as an element is contained in *Border City's* dissent!

Although the *Whiting* decision offers some support to the majority's conclusion, *Whiting* does not specifically delineate arrest or seizure as an element. Further, unlike this action, *Whiting* was an "arrest," not a "seizure," case.

Unquestionably, the better-reasoned view is that the seizure or arrest element merely concerns the issue of actual damages.[6] Accordingly, I dissent from the majority's resurrection of this "relic of a bygone era." *Lehnhausen* v. *Lake Shore Auto Parts Co.* (1973), 410 U.S. 356, 365.

Whatever happened to those champions of *stare decisis*?

---

omitted].' " *Id.* at 615-616.); *Levy* v. *Adams* (1939), 140 Fla. 515, 192 So. 177, 178 ("[A]n action for malicious prosecution may be maintained for the bringing of a civil action maliciously and without probable cause although there is no arrest of the person or seizure of property or other special circumstances warranting the action.").

[6] Ohio's appellate courts indicate their disfavor of *Bruck* but find themselves bound to adhere to *Bruck* "until such time as the Supreme Court overrules it." *Battig* v. *Forshey* (1982), 7 Ohio App. 3d 72, 74; *Dakters* v. *Shane* (1978), 64 Ohio App. 2d 196, 198 [18 O.O.3d 150]. See, also, Prosser's criticism, Prosser & Keeton, Law of Torts (5 Ed. 1984) 889, Section 120; *W.D.G., Inc.* v. *Mutual Mfg. & Supply Co.* (App. 1976), 5 O.O. 3d 397, 401.

Ohio's legal commentators are also disturbed by the harshness of the *Bruck* rule. For example, as regards the injustice inflicted on the members of our police forces, one recent reviewer notes: "Many officers mistaken [*sic*] believe that when sued for violating a suspect's rights, the officer may countersue for malicious prosecution. This cannot be validly done in Ohio. Similarly, even if the suit against the officer is dismissed, the costs incurred by the officer cannot be recovered in a later suit for malicious prosecution. Only if the officer is arrested or if the suspect causes the officer's property to be seized, or a lien placed against the officer's property, may the officer sue the suspect for malicious prosecution. The officer is in fact injured, especially his reputation, but there is no way to obtain relief or financial recovery. Pity!" Palmer, Ohio Criminal Law Review (Vol. 3 No. 6, 1985) 325.

DOUGLAS, J., dissenting. I concur with the substance of Chief Justice Celebrezze's dissent, and respectfully add the following comments.

I am troubled by the fact the majority has chosen to resurrect *Cincinnati Daily Tribune Co.* v. *Bruck* (1900), 61 Ohio St. 489, and to deemphasize this court's recent pronouncements in *Kelly* v. *Whiting* (1985), 17 Ohio St. 3d 91, and *Border City S. & L. Assn.* v. *Moan* (1984), 15 Ohio St. 3d 65.

I freely admit that *Bruck* has never been expressly overruled. Nonetheless, it is nothing more than an antiquated two and one-half page opinion, and cites scant authority for its holding. Accordingly, this court has largely ignored it for the past eighty-five years. Indeed, just a short time ago, the court unanimously restricted its significance. In *Kelly* v. *Whiting, supra,* at 94, we said:

"In order to withstand a motion to dismiss for failure to state a claim upon which relief may be granted, a complaint for malicious prosecution must allege the following: (1) a prior proceeding was maliciously instituted against the plaintiff by defendant, *Woodruff* v. *Paschen* (1922), 105 Ohio St. 396; (2) there was no probable cause for the filing of the prior lawsuit, *Melanowski* v. *Judy* (1921), 102 Ohio St. 153; and (3) the prior lawsuit was terminated in the plaintiff's favor, *Levering* v. *National Bank* (1912), 87 Ohio St. 117." In *Whiting* we made only a passing reference to *Bruck,* and then, only as an afterthought. *Id.* at 94-95.

We also de-emphasized *Bruck* in *Border City S. & L. Assn.* v. *Moan, supra.* There we said that in order for appellant to be successful in its claim for relief for malicious prosecution, "[i]t will be incumbent upon appellant to establish that these lawsuits [filed by appellees] were instituted maliciously, without probable cause, and, as a general rule, were terminated in appellant's favor." *Border City, supra,* at 66. Thus, neither *Whiting* nor *Border City* required the seizure of person or property during a prior proceedings as a necessary element of the cause of action.

In addition to being concerned about the resurrection of *Bruck, supra,* I am deeply troubled by the possible harsh ramifications of today's decision. Before articulating the problems caused by the majority opinion, it is only fair to point out that the majority's desire to encourage honest litigants to seek judicial redress, by protecting them from reprisals, is both appropriate and commendable. Unfortunately, the majority fails to balance this desire against the public's need to keep malicious litigants from misusing our judicial machinery to harass innocent victims.

Under the rule announced today, absent a seizure of person or property, a malicious litigant has absolute immunity from a suit for malicious prosecution even though that litigant initiated a prior lawsuit with actual malice and without any probable cause (or any cause whatsoever), and even though the prior lawsuit was terminated against the malicious litigant. Spurious suits against "deep-pocket" or "target" defendants have already become a significant problem. Cf. Note, Malicious Prosecu-

tion: An Effective Attack On Spurious Medical Malpractice Claims? (1976), 26 Case W. Res. L. Rev. 653, 655 (discussing groundless medical malpractice claims). Examples of "target" defendants are judges, newspapers, and public officials. Often, frivolous suits are filed merely to harass defendants, and to compel settlement of the case in order to avoid the time and expense of litigation. Sadly, today's decision will promote even more harassment litigation and allow the judicial machinery of our state to be used for improper purposes.

The majority's contention that court costs will act as an effective deterrent to these harassment suits is misplaced. A relevant Yale Law Journal article stated:

"* * * Costs lost their deterrent effect as they proved less of a burden to the wrongdoer, provided less of a remedy as they met less· of the victim's expenses, and could no longer be fashioned to meet·the wrong as judicial discretion was curtailed. By the beginning of the nineteenth century, costs had ceased to perform the function for which they had been designed — deterring false suits — and the inherited [English] system collapsed." Note, Groundless Litigation and the Malicious Prosecution Debate: A Historical Analysis (1979), 88 Yale L. J. 1218, 1229.

The majority is also in error in quoting with approval appellee's argument "* * * that among those jurisdictions which continue to adhere to the 'English Rule' are the large industrial states which, by both population and volume of litigation, are continually involved in all aspects of commercial law, and are more attuned to the realities of the business world and the concepts of reasoning which support the traditional rule."

With all due respect, this statement is not correct. See dissenting opinion herein of Celebrezze, C.J., at fns. 4 and 5.

The modern or "American Rule" of malicious prosecution is set forth in the Restatement of the Law 2d, Torts (1977) 452, Section 674. It states:

"General Principle

"One who takes an active part in the initiation, continuation or procurement of civil proceedings against another is subject to liability to the other for wrongful civil proceedings if

"(a) he acts without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim in which the proceedings are based, and

"(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought."

We should adopt this rule. It allows an avenue of redress to maligned victims who have been compelled to appear in court and defend against groundless suits. These lawsuits can cause mental suffering, loss of business, injury to reputation, and other serious damages including extensive litigation costs. The adoption of the Restatement rule will allow injured victims to recover for these damages. On the other hand, the rule

fully protects honest plaintiffs and does nothing to discourage them from invoking the aid of the courts.

For the foregoing reasons, I respectfully dissent and urge the adoption of the Restatement rule.