**Kim O. ROSS, Plaintiff–Appellee,**

v.

**Michael MEYERS, Defendant–Appellant.**

**Nos. 88–3319, 88–3920.**

United States Court of Appeals, Sixth Circuit.

Argued May 18, 1989.

Decided Aug. 25, 1989.

Rehearing Denied Oct. 30, 1989.

Frank R. Bodor (argued), Warren, Ohio, for plaintiff-appellee.

Anthony J. Celebrezze, Jr., William J. Steele, Asst. Atty. Gen., Rita S. Eppler (argued), Bennett A. Manning, Office of the Atty. Gen. of Ohio, Columbus, Ohio, for defendant-appellant.

Before ENGEL, Chief Judge and MERRITT and KRUPANSKY, Circuit Judges.

KRUPANSKY, Circuit Judge.

Michael Meyers (Meyers), an Ohio State Highway Patrol Trooper, appealed from two orders entered in the United States District Court for the Northern District of Ohio following a jury trial in this diversity action involving claims of false arrest, false imprisonment, malicious prosecution, and negligent and intentional infliction of emo-

tional distress initiated by Kim O. Ross (Ross), a resident of Florida. The first order, filed March 8, 1988, partially denied Meyers's motion for judgment notwithstanding the verdict or, in the alternative, motion for new trial. The second order, filed September 16, 1988, granted Ross's motion for sanctions for his failure to comply with the July 27, 1988 order of the district court requiring him to deposit a part of the damages awarded at trial into an escrow account.

On May 6, 1985, at approximately 2:27 a.m., Meyers arrived at the scene of a distressed motor vehicle with its front wheels lodged in a ditch just off the berm of the highway. He had been dispatched to the scene pursuant to a request for assistance from the Geauga County Deputy Sheriff, who was already present. After observing and questioning the appellee Ross, the driver of the vehicle, Meyers placed him under arrest, transported him to the Geauga County Sheriff's Office where, at approximately 3:40 a.m., he was informed that he was charged with the offense of driving while intoxicated (DWI). He was placed in a holding cell and, at 5:35 a.m., he was released after posting a $50.00 cash bond.

Although Ross volunteered to submit to a blood alcohol test, Meyers refused to convey him to the Geauga County Hospital approximately 1/10th of a mile distant from the Sheriff's Office, to have a blood test performed. At 7:30 p.m. on the same day, Ross appeared in the Chardon, Ohio Municipal Court and entered a not guilty plea to the DWI charge.

The authorities having failed to prosecute the charges against him for over three months, on August 9, 1985, Ross filed a motion for discharge asserting that he had not been afforded a speedy trial as required by Ohio law. On August 12, 1985, subsequent to overruling Ross's motion for discharge, the court scheduled his trial for August 22, 1985. The trial was thereafter continued until August 26, 1985.

On August 26, 1985, the DWI charge against Ross was dismissed by the Chardon Municipal Court by the following journal entry:

At the request of the Police Prosecutor, A.M. Psenicka, for the reason that it is in the interest of Justice, a nolle prosequi is hereby entered in the within matter at state's cost.

Under Ohio law, the four elements required to prove malicious prosecution are (1) that the defendant maliciously initiated the proceedings against the plaintiff; (2) without probable cause; (3) that the proceedings terminated in plaintiff's favor; and (4) that the plaintiff's person or property were seized during the course of the proceedings. *Crawford v. Euclid Nat'l Bank,* 19 Ohio St.3d 135, 483 N.E.2d 1168 (1985). To support a claim for false arrest, a plaintiff must prove "the depriving of a person of his or her liberty without lawful justification. Specifically, a plaintiff must show that he or she was detained and that the detention was unlawful. The tort [unlike a cause of action for a malicious prosecution] does not require proof of malice, motive or lack of probable cause." *Harvey v. Horn,* 33 Ohio App.3d 24, 514 N.E.2d 452, 454 (1986). To support a charge of false imprisonment, a plaintiff must prove that he was confined intentionally without lawful privilege and against his consent. *Adamson v. May Co.,* 8 Ohio App.3d 266, 456 N.E.2d 1212 (1982) (quoting *Feliciano v. Kreiger,* 50 Ohio St.2d 69, 71, 362 N.E.2d 646 (1977) (quoting 1 Harper & James, *The Law of Torts,* 226, § 3.7 (1956))). Generally, "the claims of false arrest and false imprisonment by police officers acting while on duty are essentially the same since the alleged false imprisonment arises out of and logically follows the arrest of plaintiffs." *Walker v. Schaeffer,* 854 F.2d 138, 142 (6th Cir.1988).

█ In the instant case, the nonexistence of probable cause was an essential element of the malicious prosecution claim and the existence of probable cause was an affirmative defense to the false arrest and false imprisonment claims. *Walker,* 854 F.2d at 142–43. Meyers argued that he was entitled to a directed verdict and/or judgment notwithstanding the verdict because he had

probable cause to arrest Ross for driving while under the influence of alcohol.

Probable cause exists in Ohio when the facts and circumstances within the arresting officer's knowledge, at the time of the incident, are sufficient to warrant a reasonable man to believe that an offense had been committed. *State v. Pavao,* 38 Ohio App.3d 178, 528 N.E.2d 970, 971 (1987). *cf. Evans v. Detlefsen,* 857 F.2d 330 (6th Cir. 1988). " 'In determining the want of probable cause, the [malicious prosecution] defendant's conduct should be weighed in view of his situation and of the facts and circumstances which he knew or was reasonably chargeable with knowing *at the time* he made the criminal complaint.' " *Huber v. O'Neill,* 66 Ohio St.2d 28, 419 N.E.2d 10, 11–12 (1981) (quoting *Melanowski v. Judy,* 102 Ohio St. 153, 131 N.E. 360) (emphasis added). The inquiry as to the existence of probable cause is fact-specific and great deference is required to be assigned to the jury's findings of fact as to the issue. *See Yancey v. Carroll County, Ky.,* 876 F.2d 1238 (6th Cir.1989) (probable cause determination is to be made by jury unless there is only one reasonable outcome). As with other jury verdicts, the evidence must be construed most strongly in favor of the verdict and all credibility decisions must be resolved in favor of the verdict. *E.g., Ratliff v. Wellington Exempted Village Schools Bd. of Educ.,* 820 F.2d 792 (6th Cir.1987).

In the instant case, Meyers argued that the jury's verdict that he acted without probable cause should be reversed because of the following "undisputed" facts:

1. At approximately 1:00 a.m. on May 5, 1985, Ross was involved in a single vehicle accident in which he drove his vehicle into a ditch.

2. Deputy Sheriff Thomas McCaffrey, a Geauga County Sheriff's Department Deputy with thirteen and one-half years experience, was the first law enforcement officer to arrive on the scene.

3. Deputy Sheriff McCaffrey observed that Ross had a moderate odor of alcohol about him, had a flushed face, and mumbled as he spoke.

4. Deputy Sheriff McCaffrey had relayed a radio message to the State Highway Patrol informing the dispatcher that there had been an accident and that the driver, Ross, was intoxicated.

5. Trooper Meyers, an Ohio State Highway Patrol Trooper with five years experience, was thereafter dispatched to the scene. The dispatcher told Trooper Meyers that there had been an accident and that an intoxicated driver was involved.

6. Trooper Meyers arrived at the scene shortly afterward, observed Ross, and conducted an interview with him.

7. At the scene, Trooper Meyers observed that Ross had a moderate odor of alcohol on his breath, that he staggered as he walked, that his eyes were bloodshot, and that he was having difficulty speaking and understanding directions.

8. Ross admitted drinking one glass of beer on the evening that the accident occurred.

Meyers's arguments are without merit. Initially, it must be noted that the jury was entitled to reject Meyers's testimony in part or in its entirety. Even if no countertestimony had been offered, the jury was free to conclude that Meyers lacked credibility and was, accordingly, free to decide in favor of plaintiff Ross. Moreover, even Meyers's "undisputed facts" do not conclusively support a finding of probable cause. If Ross had consumed only one glass of beer four hours prior to his encounter with Meyers, he probably would not have been intoxicated. Under Ohio law, a "moderate" odor of alcohol on Ross's breath does not constitute evidence of sufficient weight to support a charge of driving while intoxicated. *See State v. Taylor,* 3 Ohio App.3d 197, 444 N.E.2d 481 (act of nominally exceeding speed limit, coupled with arresting officer's perception of the odor of alcohol, which was characterized as "not persuasive or strong" and nothing more, does not support probable cause to arrest an individual

for driving under the influence of alcohol). Lack of sleep may have accounted for Ross's bloodshot eyes at 2:30 a.m. He explained that his "staggering" was caused by his wet and mud-caked shoes which resulted from attempting to extricate his vehicle from the swail along the side of the berm of the highway. Ross completed, in his own handwriting, part of the accident report form. His answers during his interrogations were coherent and his handwriting was steady and within the allocated lined spaces on the accident form.

Additionally, Meyers conceded that he did not have plaintiff perform coordination or other sobriety tests *before* he (Meyers) arrested him. *See State v. Finch,* 24 Ohio App.3d 38, 492 N.E.2d 1254, 1257 (1985) (where, *inter alia,* police officer had not instructed the arrestee to perform field sobriety tests, the officer had no probable cause to arrest for driving under the influence); *cf. State v. Downey,* 37 Ohio App.3d 45, 523 N.E.2d 521, 522 (1987) (proper police procedure is to conduct further investigations to determine whether accused is intoxicated; evidence of speeding and odor of alcohol alone are insufficient to constitute probable cause).

It is also relevant that Ross provided an explanation for his lack of coordination and confusion, *i.e.,* that he lacked coordination because he was exhausted as a result of having expended hours in his effort to find help and/or extricate his vehicle from the mud. It was obvious that Ross's mud-caked shoes, which were falling apart, impeded his ability to walk. In such circumstances, where defendant presents a believable story, the Ohio courts have ruled that the trier of fact is entitled to believe that no probable cause existed. *See State v. Murphy,* 30 Ohio App.3d 255, 507 N.E.2d 409, 410 (1986) (where trier of fact could reasonably have believed that defendant's physical condition at the time of her arrest was just as likely to have resulted from accident occurring prior to arrest as to have resulted from consumption of alcohol, defendant's conviction was reversed); *State v. Taylor,* 67 Ohio Misc. 4, 426 N.E.2d 532, 533 (Belmont County Ct. 1980) ("[A]n officer who does not ... gather any

evidence to refute a credible version of the accident not based on impaired driving abilities cannot support an arrest based solely on the existence of an accident and an odor of an alcoholic beverage about the driver.").

Obviously, the jury assigned greater credibility to Ross's testimony than to the testimony of Meyers and it was not clearly erroneous for it to conclude that Meyers had no probable cause to arrest, charge, confine, and prosecute Ross. *See Finch,* 492 N.E.2d at 1257 (emphasis in original):

> [I]t is not a violation of the law to drive smelling of alcohol or with bloodshot eyes, a flushed face, or slurred speech. In other words, merely *appearing* to be too drunk to drive is not, in our opinion, enough to constitute probable cause for arrest. Had Ranger Jones instructed appellee to perform field sobriety tests prior to placing him under arrest and had appellee failed the tests, she would have had reasonable grounds to believe that he was operating the vehicle while under the influence of alcohol, at which time she would have had probable cause to arrest appellee. The record, as it stands, however, indicates that the arrest at issue was premature.

Accordingly, the district court properly refused to grant a new trial, directed verdict, or judgment notwithstanding the verdict.

Meyers has also charged in this appeal that the trial court erred in refusing to admit the testimony of the local prosecutor, who would have testified that the DWI charge against Ross was dismissed because of his, the prosecutor's, inability to comply with speedy trial requirements of Ohio law. Meyers has argued that the prosecutor's testimony was relevant to prove that the DWI charge against Ross was not a disposition of the substantive issues of the DWI charge and, consequently, not a resolution of the merits of the charge against Ross. We need not reach this issue. It touches only on the malicious prosecution claim. Even if we were to conclude that the district court erred in barring this testimony,

the jury's general verdict for Ross on the false arrest and false imprisonment claims would remain undisturbed and would sustain the judgment entered against Meyers. *See Rimer v. Rockwell Int'l Corp.*, 739 F.2d 1125, 1130 (6th Cir.1984) (under Ohio law, where more than one issue is submitted to jury and one or more issues is submitted error free and the jury returns a general verdict, even if one theory was erroneous, the jury verdict must be affirmed) (citing *Jones v. Erie R.R.*, 106 Ohio St. 408, 140 N.E. 366 (1922)).

Meyers next challenged the trial court's September 16, 1988 order, vacating its July 27, 1988 remittitur and reinstating the jury's original verdict for punitive damages. On July 27, 1988, the trial judge had granted Meyers's motion for a remittitur and decided that the $60,000 punitive damage award should be reduced to $6,000. The trial court arrived at this decision because it was excessive in light of Meyers's inability to pay and its belief that the State of Ohio would not advance public funds to satisfy the award against Meyers, despite the fact that Meyers was clearly acting within the scope of his employment as a state patrolman when he committed the allegedly tortious acts.

However, on September 16, 1988, the trial court vacated its July 27, 1988 order of remittitur and reinstated the original jury verdict including the $60,000 punitive damage award. It appears from the record that the reinstatement of the original verdict was a "sanction" to punish defendant's "patent non-compliance" with the trial court's July 27, 1988 order, which read, in part, as follows:

> Within five working days of Mr. Ross' identification of an appropriate account, the defense is to deposit, in an interest bearing escrow account of the Plaintiff's choice, $22,500.00 plus interest at 7.88% from September 29, 1987 until the date of payment. These funds are payable to Mr. Ross if his $22,500.00 judgment is upheld on appeal.

Because Meyers had failed to comply with the above mandate by September 12, 1988, Ross had moved for sanctions. In response, Meyers requested an extension of time until September 19, 1988 to comply with the court's order because "the undersigned counsel and defendant Michael Meyers were unable to make the necessary financial arrangements to comply with this court's order."

On September 16, 1988, the district court refused to accept Meyers's explanation, contending that his actions "bespeak an intent not to comply with this Court's July 27, 1988 [order]." Accordingly, the trial judge refused to grant Meyers an extension and also vacated the $6,000 remittitur ordered on July 27, 1988 and reinstated the jury's $60,000 punitive damages verdict. Additionally, the court ordered defendant to "pay the attorney fees occasioned by his failure to comply with this court's orders subsequent to entry of judgment at the reasonable rate of $125 per hour."

■ Upon review, this court concludes that the September 16, 1988 order was an abuse of discretion and should be vacated. Initially, it should be noted that the district court granted no notice or hearing before it entered the September 16, 1988 order. It is well settled that sanctions of the kind here in issue cannot be levied without providing notice or an opportunity to be heard. *Young v. United States ex rel. Vuitton Et Fils S.A.*, 481 U.S. 787, 107 S.Ct. 2124, 2133, 95 L.Ed.2d 740 (1987); *Eash v. Riggins Trucking, Inc.*, 757 F.2d 557, 570 (3d Cir.1985). The trial court did not comply with these due process standards, and accordingly, reversal is warranted.

■ The trial judge also failed to provide an adequate explanation of the purpose or purposes of the ten-fold increase in the punitive damage award which he had previously determined to be excessive and, therefore, committed reversible error. *See Shuffler v. Heritage Bank*, 720 F.2d 1141, 1147–48 (9th Cir.1983) (where trial court did not state whether its purpose in imposing sanctions was coercive or compensatory, reversal was warranted); *Perfect Fit Industr., Inc. v. Acme Quilting Co.*, 646 F.2d 800, 810 (2d Cir.1981) (order assessing fine for contempt vacated where "district court did not state its reasoning" in imposing

fine since appellate court "cannot review the propriety of the fine without being informed of its purpose and basis.").

■ A compensatory sanction is designed to remedy a deprivation or loss, not to create additional rights. *Collins v. Barry*, 841 F.2d 1297 (6th Cir.1988). In the instant case, the deprivation caused by the failure to deposit the money in early September, 1988 was minimal. Meyers promised to pay the $22,500 into an escrow account by September 19, 1988. There was no justification for reinstating the excessive ten-fold $60,000.00 punitive damage award. A compensatory sanction must "be based upon ... actual losses sustained as a result of the contumacy." *Perfect Fit Industr., Inc.*, 646 F.2d at 810.

Accordingly, because the court finds no error in the trial court's July 27, 1988 remittitur decision, the decision of September 16, 1988 imposing sanctions is hereby VACATED and the award as remitted is REINSTATED.