[Cite as *Rogers v. Olt*, 2018-Ohio-2110.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MIAMI COUNTY**

| | | |
|---|---|---|
| RICHARD ROGERS | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO. 2017-CA-21 |
| | : | |
| v. | : | T.C. NO. 16-CV-318 |
| | : | |
| TIMOTHY J. OLT | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellee | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the 1st day of June, 2018.

. . . . . . . . . . .

RICHARD BOUCHER, Atty. Reg. No. 0033614, 12 West Monument Avenue, Suite 200, Dayton, Ohio 45402
        Attorney for Plaintiff-Appellant

DUSTIN DAVIS, Atty. Reg. No. 0085837, 306 West High Street, P.O. Box 1215, Piqua, Ohio 45356
        Attorney for Defendant-Appellee

. . . . . . . . . . . . .

DONOVAN, J.

{¶ 1} Plaintiff-appellant Richard Rogers appeals a decision of the Miami Court of Common Pleas granting defendant-appellee Timothy J. Olt's motion for summary judgment with respect to Rogers's complaint alleging the following causes of action: 1) abuse of process; 2) malicious prosecution; 3) intentional infliction of emotional distress; 4) frivolous conduct; and 5) to declare Olt a vexatious litigator.   Rogers filed a timely notice of appeal with this Court on September 14, 2017.

{¶ 2} Rogers initially became acquainted with Olt through an arts organization called Muse Machine, where Olt was employed as the orchestra director.   Specifically, in October of 2011, Rogers brought his daughter, C.R., to Muse Machine to audition for a spot in the program.   It was at this point that Olt became C.R.'s orchestra director and mentor.   C.R. was fifteen years old at the time.   For the next three years, Olt had regular contact with C.R. through the Muse Machine program.   C.R. turned eighteen in May of 2014.

{¶ 3} On August 14, 2014, C.R. left Rogers's home where she was living with her mother and father and was picked up by Olt.   Olt took C.R. to his residence where she immediately moved in and lived for several months.   Also living in Olt's residence at the time were his second wife and twin daughters.   During his deposition, Olt admitted to engaging in a sexual relationship with C.R. after she moved into his residence in August of 2014.[1]   After C.R. left his residence in May of 2014, Rogers began searching for her. Based upon text messages he retrieved from C.R.'s cell phone, Rogers suspected that

---

[1]  Olt further testified that he had subsequently divorced his second wife and was currently married to C.R. at the time of the instant proceedings.

she was with Olt.

**{¶ 4}** Thereafter on September 23, 2014, Olt filed a Petition for Civil Stalking Protection Order in which he requested that a protection order be granted on behalf of himself, his then wife, his two daughters, and C.R., whom he classified as a "household resident." In the petition, Olt alleged that C.R. left Rogers's home "due to ongoing physical and mental abuse." Because of the alleged abuse occurring at Rogers's home, Olt stated that he and his wife had decided to allow C.R. to come and live them. Olt further alleged that immediately after C.R. moved in on August 14, 2014, Rogers and his wife, Kathy, drove by Olt's residence at least once daily for an entire week. Olt also stated that Rogers drove by his residence again on August 30, 2014, while he was on a walk with his family. Finally, Olt alleged that Rogers continued to drive by his residence up until the date of the filing of the Petition.

**{¶ 5}** Rogers testified at his deposition that at some time before the filing of the first Petition, he was sitting in his motor vehicle down the street from Olt's residence when he observed C.R. pull up in the driveway with Olt. Rogers testified that at this point, he drove in front of the driveway and addressed Olt, saying, "You fat piece of s***. Keep your hands off my daughter." Rogers also testified that that he and his wife were driving by Olt's house "quite a bit to verify whether my daughter was there." Rogers testified that he drove by Olt's house over a period of a couple of weeks, two or three times a week. Rogers also acknowledged driving by Olt and his family while they were walking their dog.

**{¶ 6}** Based upon the allegations made by Olt in the Petition, the magistrate granted an ex parte civil stalking protection order to Olt against Rogers. The magistrate

scheduled a full hearing on the protection order to be held on September 30, 2014. On the date that the full hearing was to be held, the parties resolved the case with a "Stipulation of Dismissal," which stated as follows:

Now come[ ] the parties to the within action and hereby stipulate to dismiss Petitioner Timothy Olt's petition filed in the within matter, without prejudice pursuant to [C]ivil Rule 41(A)(1)(b). The parties have stipulated that neither Petitioner nor Respondent shall annoy, harass, or contact the other party by any electronic means including but not limited to text messages, emails, phone, fax, etc. The parties shall further not make disparaging remarks about the other in public. This shall include negative comments or discussions on social media. It is further stipulated that neither party shall drive past the other parties' [sic] home unless it is absolutely necessary.

The record establishes that both parties' counsel signed the stipulation and filed it with the trial court on October 30, 2014. The stipulation resolved any and all pending legal matters between the parties at that time.

{¶ 7} Just over one year later on September 24, 2015, Olt filed a second Petition for Civil Stalking Protection Order against Rogers. In the second petition, Olt alleged that Rogers had contacted Ron Hartwell, a contractor for musicians who employed Olt, in order to discuss Olt's relationship with C.R. Thereafter, Olt reviewed recorded security footage from his residence which depicted nine instances of Rogers's driving by Olt's residence between the dates of September 17, 2015, and September 20, 2015. Again, Olt requested that a protection order be granted on behalf of himself, his then wife, his

two daughters, and C.R., whom he classified as a "household resident." In his deposition, Rogers admitted that he had driven by Olt's residence during the relevant time period but could not recall how many times he had done so. Rogers further testified that he "was looking for his daughter."

{¶ 8} The magistrate granted Olt's second Petition for a Civil Stalking Protection Order on September 24, 2015. The magistrate scheduled the matter for a full hearing to be held on October 1, 2015. On January 5, 2016, Olt filed a notice of dismissal of the second Petition for a Civil Stalking Protection Order.

{¶ 9} On July 29, 2016, Rogers filed a "Complaint for Abuse of Process, Malicious Prosecution, Intentional Infliction of Emotional Distress, Frivolous Conduct, and to Declare Defendant a Vexatious Litigator" against Olt. Olt and Rogers were both deposed on January 16, 2017. Thereafter, on May 19, 2017, Olt filed a motion for summary judgment. Rogers filed a response to Olt's motion for summary judgment on July 6, 2017. On August 24, 2017, the trial court issued a decision granting Olt's motion for summary judgment.

{¶ 10} It is from this judgment that Rogers now appeals.

{¶ 11} Rogers's first assignment of error is as follows:

THE TRIAL COURT ERRED IN FAILING TO STRIKE OR DISREGARD

ALL UNSUPPORTED ALLEGATIONS FROM DEFENDANT-APPELLEE'S

MOTION FOR SUMMARY JUDGMENT.

{¶ 12} In his first assignment, Rogers contends that the trial court erred when it allegedly relied on inadmissible hearsay evidence when it granted Olt's motion for summary judgment. Specifically, Rogers argues that the trial court's reliance on the two

Petitions for Civil Stalking Protection Orders was error because the information contained therein constituted inadmissible hearsay, and Olt did not submit an affidavit attesting to the facts alleged in the Petitions.

{¶ 13} In its decision granting Olt's motion for summary judgment, the trial court stated the following with respect to the evidence it relied upon in reaching its judgment:

> The Court has reviewed the submitted evidence in this matter, *which includes the deposition of Plaintiff Richard Rogers that Defendant relies upon to support his Motion for Summary Judgment. It is not necessary for the Defendant to submit just an Affidavit when there is other credible evidence of sworn testimony in a deposition of the Plaintiff himself. Furthermore, Defendant relies upon Court documents and record journal entries which are Public Records, admissible as a hearsay exception.* Therefore, Plaintiff's motion to not consider and/or strike the Defendant's assertions of fact is not well-taken and it is hereby overruled.

(Emphasis added.)

{¶ 14} As this Court has previously noted, the "trial court has broad discretion with respect to the admission or exclusion of evidence, and its decision on such matters will not be disturbed by a reviewing court absent an abuse of discretion that results in material prejudice. *State v. Noling* (2002), 98 Ohio St.3d 44, 781 N.E.2d 88, 2002-Ohio-7044." *Stemple v. Dunina*, 2d Dist. Miami No. 04CA40, 2005-Ohio-5590, ¶ 36. Evid.R. 801(C) defines hearsay as a "statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." A "statement," as included in the definition of hearsay, is an oral or written assertion or

nonverbal conduct of a person if that conduct is intended by him as an assertion. Evid.R. 801(A). "An 'assertion' for hearsay purposes 'simply means to say that something is so,' e.g., that an event happened or that a condition existed." (Emphasis and citations omitted.) *State v. Leonard*, 104 Ohio St.3d 54, 2004–Ohio–6235, 818 N.E.2d 229, ¶ 97. Assertions can generally be proven true or false. *Id.* In general, hearsay is not admissible. Evid.R. 802.

{¶ 15} In the instant case, the trial court stated that in granting summary judgment to Olt, it specifically relied on the deposition testimony of Rogers in reaching its decision. The trial court also stated that it reviewed "court documents and record journal entries" before issuing its decision. Ostensibly, the "court documents" referenced by the trial court include the two Petitions for Civil Stalking Protection Orders which were marked as exhibits during the depositions. In his deposition, Rogers admitted to all of the facts which supported the issuance of both ex parte protection orders. Rogers's own sworn deposition testimony constituted admissible evidence upon which Olt relied in support of his motion for summary judgment. There is nothing in the record to suggest that the trial court relied on hearsay statements when it granted summary judgment to Olt. All of the evidence relied upon by the trial court in reaching its decision granting summary judgment to Olt was admissible. Therefore, Olt was not required to file an affidavit attesting to all of the facts alleged in his motion for summary judgment.

{¶ 16} Rogers's first assignment of error is overruled.

{¶ 17} Rogers's second assignment of error is as follows:

THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF APPELLEE.

{¶ 18} We review a trial court's decision on a motion for summary judgment based on a de novo standard of review. *Grafton v. Ohio Edison Co.*, 77 Ohio St.3d 102, 105, 671 N.E.2d 241 (1996). "De novo review means that this court uses the same standard that the trial court should have used, and we examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Brewer v. Cleveland Bd. of Edn.*, 122 Ohio App.3d 378, 383, 701 N.E.2d 1023 (8th Dist.1997), citing *Dupler v. Mansfield Journal Co.*, 64 Ohio St.2d 116, 119–120, 413 N.E.2d 1187 (1980). "Accordingly, we afford no deference to the trial court's decision and independently review the record and the inferences that can be drawn from it to determine whether summary judgment is appropriate." *Bank of New York Mellon v. Bobo*, 2015-Ohio-4601, 50 N.E.3d 229, ¶ 9 (4th Dist.).

{¶ 19} Summary judgment is appropriate when the moving party demonstrates that: (1) there is no genuine issue of material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion when viewing the evidence most strongly in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party. *Hudson v. Petrosurance, Inc.*, 127 Ohio St.3d 54, 2010-Ohio-4505, 936 N.E.2d 481, ¶ 29; *Sinnott v. Aqua–Chem, Inc.*, 116 Ohio St.3d 158, 2007-Ohio-5584, 876 N.E.2d 1217, ¶ 29. The moving party bears the initial burden to demonstrate the absence of a genuine issue of material fact for each of the elements of its claim. *Mitseff v. Wheeler*, 38 Ohio St.3d 112, 115, 526 N.E.2d 798 (1988). The Supreme Court of Ohio set out the burdens of proof when considering motions for summary judgment in *Dresher v. Burt*, 75 Ohio St.3d 280, 662 N.E.2d 264 (1996). The court stated:

[W]e hold that a party seeking summary judgment, on the ground that the nonmoving party cannot prove its case, bears the initial burden of informing the trial court of the basis for the motion, and identifying those portions of the record that demonstrate the absence of a genuine issue of material fact on the essential element(s) of the nonmoving party's claims. The moving party cannot discharge its initial burden under Civ.R. 56 simply by making a conclusory assertion that the nonmoving party has no evidence to prove its case. Rather, the moving party must be able to specifically point to some evidence of the type listed in Civ.R. 56(C) which affirmatively demonstrates that the nonmoving party has no evidence to support the nonmoving party's claims. If the moving party fails to satisfy its initial burden, the motion for summary judgment must be denied. However, if the moving party has satisfied its initial burden, the nonmoving party then has a reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial and, if the nonmovant does not so respond, summary judgment, if appropriate, shall be entered against the nonmoving party.

*Id.* at 293.

{¶ 20} As previously discussed, the claims brought by Rogers in the present case include 1) abuse of process; 2) malicious prosecution; 3) intentional infliction of emotional distress; 4) frivolous conduct; and 5) to declare Olt a vexatious litigator. In granting summary judgment, the trial court focused on Rogers's deposition testimony in which he admitted to the conduct that served as the basis for the granting of the two Petitions for Protection Orders. For the following reasons, we find that the trial court did not err when

it granted Olt's motion for summary judgment.

## Abuse of Process

{¶ 21} The elements of a claim for abuse of process are: "(1) that a legal proceeding has been set in motion in proper form and with probable cause; (2) that the proceeding has been perverted to attempt to accomplish an ulterior purpose for which it was not designed; and (3) that direct damage has resulted from the wrongful use of process." *See Malone v. Lowry*, 2d Dist. Greene No. 06-CA-101, 2007-Ohio-5665, ¶ 16, citing *Yaklevich v. Kemp, Schaeffer & Rowe Co., L.P.A.*, 68 Ohio St.3d 294, 298, 626 N.E.2d 115, 118 (1994).

{¶ 22} In his complaint, Rogers argues that both petitions were filed willfully and maliciously for the improper purpose of keeping C.R. isolated from him. Rogers also alleged that Olt filed the petitions so that he could continue to take advantage of C.R. and engage in sexual relations with her. However, the record establishes that Olt was able to successfully obtain two ex parte protection orders against Rogers which Rogers did not challenge. *See Malone* at ¶ 16. Rather, Rogers agreed to a "Stipulation of Dismissal" which disposed of the first petition, and Olt voluntarily dismissed the second petition. Other than his bare assertions to the contrary, Rogers has presented no evidence which establishes that the petitions were filed in an attempt to accomplish an ulterior motive for which they were not designed. Therefore, there is no genuine issue of material fact and Olt is entitled to judgment as a matter of law on the abuse of process claim. *See id.*

## Malicious Prosecution

{¶ 23} In order to establish a claim for malicious prosecution, the plaintiff must prove that there was: "(1) malicious institution of prior proceedings against plaintiff by

defendant * * *, (2) lack of probable cause for the filing of the prior lawsuit * * *, (3) termination of the prior proceedings in plaintiff's favor, * * * and (4) seizure of plaintiff's person or property during the course of prior proceedings * * *." *Robb v. Charter Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 269, 662 N.E.2d 9 (1996), citing *Crawford v. Euclid Natl. Bank*, 19 Ohio St.3d 135, 139, 483 N.E.2d 1168 (1985).

**{¶ 24}** Before the plaintiff can be successful, it must be shown that the prior proceeding was terminated in his favor. A proceeding is terminated in favor of the accused "only when its final disposition indicates that the accused is innocent." *Ash v. Ash*, 72 Ohio St.3d 520, 522, 651 N.E.2d 945 (1995). When a prosecution is terminated by way of a voluntary settlement or agreement of compromise with the accused, it is not indicative of guilt or innocence and thus, is not a termination in favor of the accused. *Id.* at 523. Here, the parties entered into a voluntary settlement agreement in the stalking case which was filed as a "Stipulation of Dismissal" which disposed of the first petition.

**{¶ 25}** As previously stated, Olt voluntarily dismissed the second petition filed against Rogers. Voluntary dismissal of a complaint is not a termination of the proceedings in a party's favor for purposes of a malicious prosecution claim. *Jones v. Nichols*, 12th Dist. Warren No. CA2012-02-009, 2012-Ohio-4344, ¶ 12, citing *Miller v. Unger*, 192 Ohio App.3d 707, 950 N.E.2d 241, 2011–Ohio–990, ¶ 16 (12th Dist.). In this case, after receiving the second ex parte protection order, Olt voluntary dismissed the petition against Rogers. Olt never received a permanent CSPO because he dismissed the case before it went forward. For this reason, we find that Rogers has failed to show the prior proceedings were terminated in his favor, and he therefore cannot prevail on the claim of malicious prosecution. Rogers has failed to point to specific portions of the

record exhibiting a genuine issue of material fact, and as a result Olt is entitled to judgment as a matter of law on the malicious prosecution claim. *See Malone* at ¶ 17.

## Intentional Infliction of Emotional Distress

{¶ 26} In order to be successful on a claim for intentional infliction of emotional distress, a plaintiff must prove, "(1) the defendant intended to cause emotional distress to the plaintiff, (2) the defendant's conduct was so extreme and outrageous as to go beyond the bounds of decency and when such conduct can be considered utterly intolerable in a civilized society, (3) defendant was the proximate cause of plaintiff's psychiatric injury, and (4) the mental anguish suffered by the plaintiff is so serious and of a nature that no reasonable person can be expected to endure." *Cox v. Kettering Med. Ctr.*, 2d Dist. Montgomery No. 20614, 2005-Ohio-5003, ¶ 30-31. Liability for intentional infliction of emotional distress "does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Yeager v. Local Union 20*, 6 Ohio St.3d 369, 375, 453 N.E.2d 666 (1983).

{¶ 27} In his complaint, Rogers contends that the filing of the petitions was intentional, malicious and willful and that Olt knew or should have known it would result in serious emotional distress to Rogers. However, other than merely alleging that Olt's conduct in filing the petitions constituted extreme and outrageous conduct, Rogers fails to adduce any evidence which would create a genuine issue of material fact with respect to his claim for intentional infliction of emotional distress. Again, we note that Olt was able to successfully obtain two ex parte protection orders against Rogers which he did not challenge. Furthermore, Rogers admitted to all of the facts which supported the issuance of both ex parte protection orders. It was Rogers's own conduct that

precipitated the filing of the petitions, and Olt acted within the law by filing said petitions.

{¶ 28} Upon review, we conclude that Rogers failed to make sufficient factual allegations in order to constitute a claim for intentional infliction of emotional distress. Rogers has failed to allege facts that Olt possessed the requisite intent to cause him severe emotional distress, or that Olt's actions were so outrageous as to go beyond all possible bounds of decency. Accordingly, Rogers has failed to plead sufficient facts to support a claim for intentional infliction of emotional distress.

<strong>Frivolous Conduct / Vexatious Litigator</strong>

{¶ 29} R.C. 2323.51(A)(2) defines "frivolous conduct," in pertinent part, as follows:

(a) Conduct of an inmate or other party to a civil action, * * * that satisfies any of the following:

(i) It obviously serves merely to harass or maliciously injure another party to the civil action or appeal or is for another improper purpose, including, but not limited to, causing unnecessary delay or a needless increase in the cost of litigation.

(ii) It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii) The conduct consists of allegations or other factual contentions that have no evidentiary support or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

(iv) The conduct consists of denials or factual contentions that are not warranted by the evidence or, if specifically so identified, are not reasonably based on a lack of information or belief.

**{¶ 30}** "Whether particular conduct is frivolous may be either a factual or a legal determination. * * *   A trial court's factual finding that a party's conduct was [or was not] frivolous will not be disturbed where the record contains competent, credible evidence to support the court's determination.   * * * In contrast, whether a pleading is warranted under existing law or can be supported by a good-faith argument for an extension, modification, or reversal of existing law is a question of law, which is reviewed de novo." *Swartz v. Hendrix*, 2d Dist. Darke No. 2010–CA–18, 2011–Ohio–3422, ¶ 22, citing *Foland v. Englewood*, 2d Dist. Montgomery No. 22940, 2010–Ohio–1905, ¶ 32.

**{¶ 31}** Akin to a claim for frivolous conduct, the vexatious-litigator statute allows a person who has defended against habitual and persistent vexatious conduct to ask a trial court to declare the person who allegedly engaged in that conduct a vexatious litigator. R.C. 2323.52(B).   A "vexatious litigator" is "any person who has habitually, persistently, and without reasonable grounds engaged in vexatious conduct in a civil action or actions, whether in the court of claims or in a court of appeals, court of common pleas, municipal court, or county court, whether the person or another person instituted the civil action or actions, and whether the vexatious conduct was against the same party or against different parties in the civil action or actions. * * * " R.C. 2323.52(A)(3).   "Vexatious conduct" includes a party's civil-action conduct that "(a) * * * obviously serves merely to harass or maliciously injure another party to the civil action" or that "(b) * * * is not warranted under existing law and cannot be supported by a good faith argument for an

extension, modification, or reversal of existing law." R.C. 2323.52(A)(2). "Conduct" includes filing a civil action or asserting a claim, defense, or other position. R.C. 2323.51(A)(1)(a).

**{¶ 32}** Other than his conclusory assertions in his complaint which merely restate the language in R.C. 2323.51(A)(2) and R.C. 2323.52, Rogers fails to establish any attempt or act on Olt's part designed to harass or threaten Rogers with no reasonable basis in law. Olt was able to successfully obtain two ex parte protection orders against Rogers which he admitted to and did not challenge. It was Rogers's own conduct that precipitated the filing of the petitions, and Olt acted within the law by filing said petitions. As noted by the trial court, the conduct which formed the basis for the second petition consisted of acts that Rogers had previously agreed to not engage in pursuant to the joint "Stipulation of Dismissal." Therefore, the trial court did not err when it granted summary judgment to Olt on Rogers's claims for frivolous conduct and vexatious litigator status.

**{¶ 33}** Rogers's second assignment of error is overruled.

**{¶ 34}** Both of Rogers's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

WELBAUM, P.J. and HALL, J., concur.


Copies mailed to:

Richard Boucher
Dustin Davis
Hon. Jeannine N. Pratt