[Cite as *New Lebanon v. Krahn*, 2015-Ohio-4791.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| VILLAGE OF NEW LEBANON, OHIO | : | |
| | : | |
| Plaintiff-Appellant | : | C.A. CASE NO.   26659 |
| | : | |
| v. | : | T.C. NO. 2012-CV-03566 |
| | : | |
| BERTIE L. KRAHN, et al. | : | (Civil appeal from |
| | : |   Common Pleas Court) |
| Defendants-Appellees | : | |
| | : | |

. . . . . . . . . . .

**O P I N I O N**

Rendered on the __20th__ day of ____November____, 2015.

. . . . . . . . . .

RONALD D. KEENER, Atty. Reg. No. 0002145, Ronald D. Keener Co., LPA, 125 West Main Street, New Lebanon, Ohio 45345
        Attorney for Plaintiff-Appellant

TIMOTHY G. PEPPER, Atty. Reg. No. 0071076, and VALERIE M. TALKERS, Atty. Reg. No. 0088769, Taft Stettinius & Hollister LLP, 40 North Main Street, Suite 1700, Dayton, Ohio 45423
        Attorney for Defendants-Appellees

. . . . . . . . . . . .

DONOVAN, J.

        **{¶ 1}** This matter is before the Court on the Notice of Appeal of the Village of New Lebanon ("the Village"), filed April 22, 2015.   The Appellees herein are Bertie L. Krahn and Trails End Lounge, which is owned by Krahn (collectively, "Trails End").    At issue is the award of attorney fees in favor of Trails End after the Village dismissed its complaint

against Trails End for malicious prosecution. We hereby affirm the judgment of the trial court.

{¶ 2} The Village's Notice of Appeal provides that it

* * * is appealing the Decisions made by the Court below, said decisions being the Decision, Order, and Entry on Defendant's Motion for Fees filed with the Court on September 26, 2013 * * * ; the Decision, Order and Entry on Motions for Reconsideration filed in the Court on February 21, 2014 * * *; the Magistrate's Decision filed in the Court on February 28, 2014 * * * ; and the Decision, Order and Entry Overruling Objections to the Magistrate's Decision filed March 25, 2015 * * ** .

{¶ 3} On May 18, 2011, Trails End filed a "Complaint for Temporary Restraining Orders; Preliminary and Permanent Injunctive Relief" against George Markus, the Municipal Manager of New Lebanon; David Lunsford, the Zoning Compliance Officer of New Lebanon; and the New Lebanon Fire Department. The complaint alleged that Trails End brought the action against "all named and to-be-named Defendants." Trails End alleged that it had received "Notices to Appear for alleged Zoning Violations," and that Trails End filed a Motion to Dismiss in response because the notices lacked merit. The complaint alleged that Trails End received a bill for $918.77 for lawn care and mowing from the Village, and that Trails End did not violate the city ordinance regarding grass height. The complaint further alleged that Trails End was cited for zoning violations regarding its parking lot, and that it also received a report from the Fire Department detailing alleged violations under the Ohio Fire Code. The complaint asserted that "Defendants have continued to harass, bother, molest, annoy, intrude, and/or interfere

with [Trails End] ow[n]ing, operating, and conducting business * * *."  On August 10, 2011, Trails End voluntarily dismissed the complaint against the Village.

{¶ 4} On May 17, 2012, the Village filed a complaint against Trails End, alleging malicious prosecution of a frivolous claim based upon Trails End's prior complaint. According to the Village, the action initiated by Trails End "was brought merely to harass or maliciously injure [the Village] * * * so as to prevent the Village from appropriate and proper enforcement of the zoning laws as well as of (sic) the State Fire code and that said action was not warranted under any existing law and that there was no evidentiary support for the allegations contained in the action."  The complaint provided that the Village "incurred damages in the defense of the malicious prosecution of the frivolous action filed by [Trails End] by expending time of Municipal employees, attorney fees, court costs, as well as the payment of defense expenses with respect to that frivolous action."  The Village sought judgment in the amount of $25,000.00.

{¶ 5} On June 15, 2012 Trails End answered the Complaint, and on July 9, 2012, Trails End filed a "Notice of Filing Subpoena Duces Tecum Return Receipts," indicating that subpoenas had been served upon seven individuals.  The Village filed a "Motion to Quash" the subpoenas, and Trails End filed "Defendants' Motion to Strike Plaintiff's Motion to Quash," asserting in part that the Village failed to comply with Civ.R. 45(C)(3)(d) and failed to attempt to resolve any claim of undue burden prior to filing its "Motion to Quash."

{¶ 6} On October 30, 2012, the Village filed a Motion for Summary Judgment.  On November 13, 2012, Trails End filed "Defendants' Rule 56(F) Motion," asserting that a "continuance is necessary to allow for discovery to be completed and to provide

Defendants with the information necessary to fully and adequately respond to the Motion for Summary Judgment." The trial court granted the motion for a continuance. On December 14, 2012, Trails End filed a second "Notice of Filing Subpoena Duces Tecum Receipts," indicating that subpoenas had been served upon two individuals.

{¶ 7} On January 4, 2013, the parties filed a "Joint Motion to Amend the Final Pretrial Order," seeking an extension of time, which the trial court granted. The court scheduled trial for July 22, 2013. On April 3, 2013, Trails End filed a "Notice of Filing Subpoena Duces Tecum Receipt" reflecting that an additional subpoena had been served. On June 24, 2013, the parties filed a "Joint Pre-Trial Statement."

{¶ 8} On June 25, 2013, the Village filed "Plaintiff's Voluntary Dismissal of Complaint," and on July 24, 2013, Trails End filed "Defendants' Motion for Fees," pursuant to R.C. 2323.51. Trails End asserted that "Ohio law provides for the award of attorney's fees where a claim has been brought that is not warranted by existing law and cannot be supported by a good faith argument for an extension, modification or reversal of existing law * * *." The motion provides: "[The Village's] Complaint identified two causes of action – malicious prosecution and abuse of process. * * * Neither of those two causes of action was viable as a matter of law on the undisputed facts of this case, as those facts were known to Plaintiff at the time of filing." Trails End asserted that for a malicious prosecution plaintiff to be successful, the plaintiff must demonstrate that a prior action terminated in the plaintiff's favor, and since Trails End voluntarily dismissed its complaint against the Village, the action did not terminate in the Village's favor. Trails End further asserted that "Ohio courts require seizure of property in malicious civil prosecution cases," and that the Village cannot establish such a seizure. Trails End requested a

hearing to determine the amount of the award of fees and costs.

{¶ 9} On August 5, 2013, the Village filed "Plaintiff's Memorandum Contra Defendant[s'] Motion for Fees." According to the Village, the "instant action was brought about as a response to the previous litigation filed by the Defendants herein. The response is not only justified but is viable based upon the previous action, the previous action having been filed to seek a Court Order for and to accomplish a purpose which the Court cannot grant." The Village asserted that the motion for fees should fail and be dismissed. It asserted that Trails End "presented themselves with unclean hands." The Village asserted that it is "a Municipality incorporated and organized under the laws of the State of Ohio and as such, is entitled to the protection under an absolute qualified privilege or privileges by operation of O.R.C. §2744.03."

{¶ 10} The Village asserted that for Trails End to "ask the court to enjoin a Municipality from enforcing the law is beyond the bounds of the Court system." Regarding the seizure requirement, the Village asserted that "it can be submitted that there is a good faith argument for an extension, modification, or reversal of existing law or the establishment of a new law relating to the elements of malicious prosecution," citing *Lemieux v. Central Oil Field Supply Co. of Logan*, 11th Dist. Ashtabula No. 89-A-1479, 1990 WL 128277 (Sept. 7, 1990).

{¶ 11} On August 12, 2013, Trails End filed "Defendants' Reply in Support of Their Motion for Fees." Therein they asserted that the Village filed its complaint against them "in retaliation for the previous litigation, and cost the Defendants a great deal of money as a result." Trails End asserted that the "prior suit against [the Village] lasted only a few months, and did not even proceed to depositions. * * * In stark contrast, [the Village] drove

its lawsuit against Defendants all the way to the brink of trial. Only after extensive discovery was completed, and only when the parties were days away from trial, did" the Village dismiss its case.

{¶ 12} Trails End asserted as follows regarding immunity:

[The Village] attempts to hide behind Ohio's political subdivision immunity statute, in effect arguing that it should be permitted to misuse the legal system by filing frivolous lawsuits with impunity. Plaintiff offers no legal authority for this argument, because there is none. The immunity statute applies to "civil actions," while R.C. §2323.51 authorizes "awards" in cases that are already pending. Furthermore, there is no judicial precedent for political subdivision immunity under § 2323.51, and the appeals courts that have considered the matter have held that political subdivisions are subject to awards. * * *.

Finally, Trails End asserted that the Village failed to rebut Trails End's showing that the claims alleged by the Village were frivolous.

{¶ 13} In its decision on the motion for fees, the trial court initially addressed Trails End's assertion that they were entitled to fees based upon the frivolous conduct of the Village as follows:

Here, the Court finds that [the Village] knew, should have known, or later discovered that at least three of the elements for malicious prosecution could not have been supported by law or asserted facts. Primarily, and most importantly, the previous action to which the [the Village] so frequently refers *did not* terminate in [the Village's] favor. The previous action was

terminated by voluntary dismissal, by virtue of Ohio Civil Rule 41(A), in which the plaintiff has [the] option to dismiss an action instituted by them without prejudice. A quick search of relevant case law would have apprised [the Village] of the fact that a voluntary dismissal does not mean that the matter terminated in [the Village's] favor, but rather that it merely was settled. Second, [the Village] has not suffered a seizure of either its person or property. While Plaintiff argues that the seizure requirement should be re-evaluated, case law very clearly abides by, *and requires* a seizure to occur, whether it be of person or property.* * * Although a preliminary injunction hearing was scheduled for the previous case, Plaintiff did not have its person, its actions, nor its property seized because the case was dismissed before the injunction hearing could happen.

Finally, the Court finds that there are no facts which suggest that Defendant's previous case was filed out of malice or with malicious intent. While [the Village] argues that [Trails End] instituted the previous proceeding "frivolously", and with perversion, [the Village] has failed to present any evidence other than broad allegations of malicious intent. In reviewing the facts of this case, the Court views the previous case as an attempt to appeal the citations and violations alleged by the City and its employees on the grounds of improper process and procedure. * * * Therefore, the Court finds that Plaintiff has engaged in frivolous conduct under R.C. §2323.51(A)(2)(a)(ii) and (iii).

**{¶ 14}** Regarding statutory immunity, the court determined that the Village is a

political subdivision, and that it was "engaged in a proprietary function when it filed suit against [Trails End] for malicious prosecution," such that it "is not protected by statutory immunity." The court further analyzed whether the Village was entitled to "assert any additional defenses or immunities * * *." The court found that "the only manner in which [Trails End] may avoid the statutory immunity [provided by R.C. 2744.03(A)(6)] is by proving [the Village's] actions were with malicious purpose, bad faith, or were performed in a wanton or reckless manner." After reviewing Trails End's Motion for Fees and Reply, the court found that Trails End "has presented no evidence supporting the allegation that [the Village's] actions were malicious, and/or in bad faith, or that the actions were performed in a wanton or reckless manner." The court concluded that "without any showing of malicious purpose, bad faith, or wanton and reckless conduct, [the Village] is protected by R.C. 2744.03(A)(6)."

{¶ 15} Finally, the court determined as follows:

> * * *
>
> **C.  Rule 11 Sanctions**
>
> Although most often used congruently with R.C. § 2323.51, appropriate sanctions and attorneys fees may be awarded through a motion for fees pursuant to Ohio Rule of Civil Procedure 11. * * *
>
> * * *
>
> As previously discussed, the Court finds that there are no good legal grounds to support the allegations in the complaint, and thus the signing of the Complaint could have only happened in willful violation of Civ.R.11. Again, the most important factor in making this determination is the very

basic element of malicious prosecution, which requires the previous action to terminate in Plaintiff's favor, and according to solid case law a voluntary dismissal is *not* a termination in the Plaintiff's favor. Therefore, the Court finds that [the Village] has violated Civ.R. 11 on the basis that the Complaint is not supported by law.

Additionally, the Court finds that [the Village] has failed to show that the Complaint is also supported by the facts of this case. To this (sic), the Court considers the facts alleged in the Complaint and two elements of malicious prosecution. In review of the Plaintiff's Motion for Summary Judgment, filed on October 30, 2012, and its Response, [the Village] cannot point to any person or property which was seized in the previous action, an element of the claim. Instead, [the Village] argues that the Court should consider other judgments which lament the seizure requirement, and asks this Court to overturn sound precedent set by the Supreme Court of Ohio. The second element, malicious intent, is also lacking. In fact, [the Village] does not address any malicious intent of [Trails End] in either the Motion for Summary Judgment or its Response except for bald allegations of "perverted intent." Thus, this Court finds that [the Village] and [counsel for the Village] knew or should have known that its Complaint and claims were not supported by the facts of this case.

In finding a violation of Civ.R. 11, the Court inherently finds that statutory immunity is inapplicable. While Chapter 2744 grants immunity to political subdivisions for damages, costs, and awards in tort actions, that

immunity does not extend to sanctions imposed through the Ohio Rules of Civil Procedure. * * *

* * *

Based upon these findings, the Court, ***on its own motion,*** orders the parties to show cause as to why costs, including attorney fees and expenses of defending the suit, should not be awarded to [Trails End.]

{¶ 16} On October 18, 2013, the Village filed a "Motion for Reconsideration and Memorandum Contra Civil Rule 11 Action." Therein, the Village asserted that "it is a mistake for this Court to view the previous case as an attempt to appeal the citations and violations alleged by the Village and its employees. The matters that had been mentioned had all been resolved." According to the Village, "asking the Court to permanently enjoin a Municipality from enforcing its laws and permanently enjoin a duly licensed Fire Inspector from doing fire inspections within his jurisdiction is and constitutes in itself a malicious act."

{¶ 17} The Village asserted as follows:

As to the seizure of Plaintiff's person or property, it was necessary for [the Village] to expend time and money to defend the action. Personnel from the Village had to take their time away from their normally assigned duties in order to assist defense counsel in defending the action; office personnel were required to expend time and money with copying materials, obtaining certified copies of the prior determinations of the zoning violation cases; and transmitted all of that to defense counsel. The Village was required to pay the deductible portion of their insurance coverage to their

insurance carrier. All of that resulted in time and expense, therefore, a seizure of property.

**{¶ 18}** The Village asserted that "the bringing of this action in order to recover monies that were paid out of the government fund and budget, is, in fact, a government function." Finally, the Village asserted that "there was <u>no</u> willful violation of Rule 11 * * *."

**{¶ 19}** On October 29, 2013, Trails End filed "Defendants' Submission in Response to Court's Order to Show Cause," asserting that the court "correctly concluded that [the Village's] conduct in this case violated Rule 11. Nothing in Plaintiff's Submission on that issue changes the Court's analysis. Therefore, in the absence of relief under § 2323.51, an award of fees and costs pursuant to Rule 11 is justified and warranted."

**{¶ 20}** On November 5, 2013, the Village filed a "Supplemental Motion for Reconsideration and Memorandum Contra Civil Rule 11 Action." The Village asserted that there should be "a remedy for the costs and damages suffered by" the Village, and that "this undersigned counsel does not agree with the current case precedent. It is honestly and legitimately felt that the current case precedent does not address matters of this instant type and is wrong." According to the Village, the "bringing of an action that may not be supported by existing case law does not necessarily mean that there is not good ground to support the action. The precedent can be challenged in the hope of modifying the existing case law." The Village asserted that the reason its "Complaint was withdrawn and dismissed revolved around discovery that [the Village] had another insurance policy that would make [the Village] whole insofar as what had been expended in Defendant's Complaint litigation. It would not have been proper to proceed with this

case when [the Village] had found a way to mitigate its damages in another source."

**{¶ 21}** On November 5, 2013, Trails End filed "Defendants' Motion for Reconsideration of Court's September 26, 2013 Decision, Order and Entry on Defendants' Motion for Attorney Fees." Trails End asserted as follows:

> * * * Defendants respectfully disagree with the Court's conclusion that [the Village] is entitled to statutory immunity from liability under Ohio Rev. Code § 2323.51. The plain language of Ohio Rev. Code § 2744.03(A)(6) – the statute relied upon by the Court when granting immunity to Plaintiff – only applies to the issue of individual employee immunity, not the immunity of the political subdivision itself.
>
> * * *.

**{¶ 22}** On November 13, 2013, the Village filed "Plaintiff's Memorandum Re: Defendant's Motion for Partial Reconsideration of Court's September 26, 2013 Decision, Order & Entry on Defendant's Motion for Attorney Fees." Therein the Village again asserted that Trails End's initial complaint rose "to the level of a frivolous conduct and was, therefore, actionable." The Village asserted that "to collect monies that were unnecessarily expended due to the fault of a third party, clearly falls under the category of being necessary or essential to the exercise of the powers of the political subdivision." The Village asserted that it was entitled to immunity, and although it can "be argued that there are elements of malicious prosecution that may not be met under existing law, there is also a good faith argument for an extension, modification, or reversal of existing law." According to the Village, "with the knowledge available to counsel, this instant matter was not brought with any willful intent to violate Civil Rule 11 or any malicious intent against

Defendants herein."

**{¶ 23}** On November 20, 2013, "Defendants' Response to Plaintiff's Motion for Reconsideration and Supplemental Memorandum in Support of Motion for Reconsideration and Defendants' Reply to Plaintiff's Memorandum Regarding Defendants' Motion for Partial Reconsideration" was filed. Therein Trails End asserted that the Village performed a proprietary function in filing its complaint and not a governmental function. According to Trails End, it "is the specific action itself that is determinative, and the filing of malicious prosecution and abuse of process claims in response to an allegedly baseless action is clearly not limited to governmental entities; rather, such a response is routinely engaged in by nongovernmental persons." Trails End requested attorney fees and costs "pursuant to either Ohio Rev. Code § 2323.51, Ohio R. Civ. P. 11, or both."

**{¶ 24}** On February 21, 2014, the court ruled upon the motions for reconsideration. The court initially noted that the motions for reconsideration were within its jurisdiction since, "first, this Court did not certify pursuant to Civ.R. 54(B) that there was no just reason for delay, and second, the Court requested additional response from the parties * * * ." The court affirmed "its original finding of frivolous conduct on the part of [the Village] in that its claim for malicious prosecution was not supported by existing law and [the Village] presented no good faith arguments for changing several of the elements of malicious prosecution."

**{¶ 25}** The court found as follows regarding immunity:

R.C. § 2744.01(C)(1) defines the term "governmental function", and

does not specifically include the filing of civil actions which are not actions

to enforce or prosecute an ordinance, regulation, or other law. [R.C.] § 2744.01(C)(2)(f),(i). Also not included in this list of exceptions is the management of a government budget, however, this Court would assume that effective management of a budget would be inherent to the success of each of the excepted governmental functions. Arguably, creating and abiding by a budget could be a function the "general assembly mandates a political subdivision to perform", but the Court could not find any such provision in the Revised Code, nor did [the Village] provide the Court with such a mandate. R.C. § 2744.01(C)(2)(x). The act of budgeting is highly generic; [a]ny individual may budget their own personal finances and major corporations often develop budgets for their business' quarter or year. [footnote omitted]. While only governmental employees develop and control the government budget, the acts are not different than that of private budgets. Similarly, a non-governmental person could not file suit in a court of this jurisdiction on behalf of the municipality, yet the act of filing suit does not become a governmental function when the government performs the act. This is inapposite of many of the other "governmental functions." For example, private individuals are not able to regulate traffic, enforce the law, or plan or design new city improvements. [footnote omitted]. Thus, the Court is unconvinced that the act of budgeting is "governmental" in nature.

Even if managing the budget of a governmental entity is governmental in nature, the Court must consider the relationship between the underlying premise of the lawsuit and the act of filing the lawsuit itself.

[The Village] argues that this is akin to filing a breach of contract suit against an individual who has contracted with the municipality, in that the governmental function of contracting should translate to the suit in order to recover damages. The apparent difference between this example and the instant case is simply that the instant action was filed in tort. That is to say, [the Village] did not perform any act (like contracting) related to the lawsuit and would not otherwise have any reason to file the suit but for the alleged acts of the Defendant and the subsequent alleged monetary damage. And while the expenditure of funds to defend a legal action may indirectly relate to and possibly change the management of the budget, the Court finds that it is not one in the same as recovering on a breach of contract. Thus, the Court concludes as it did previously that [the Village] was engaged in a proprietary function when it filed the instant suit and qualifies as an exception to statutory immunity.

{¶ 26} The court further found that R.C. 2744.03(A)(6) applies to employees and "is not applicable to [the Village], and that none of the five grants of immunity protects [the Village's] conduct." The court specifically examined R.C. 2744.03(A)(3) and (5) and noted as follows:

* * *Both of these grants of immunity concern an employee's discretionary acts, however, they differ in two respects. First, § 2744.03(A)(3) requires that the employee be engaged in policy-making, planning, or enforcement by virtue of the duties and responsibilities of the office or position of the employee, meaning that not all employee conduct is

covered within the scope of their employment. Second, § 2744.03(A)(5) contains a limit on its grant of immunity, in that only those decisions which were made in order to "acquire, or how to use" equipment or other resources of the government entity is protected. *Elston v. Howland Local Sch.,* 113 Ohio St.3d 314, 320, 2007 Ohio 2070, 865 N.E.2d 845.

Here, [the Village] did not engage in any discretionary decision making regarding the use of acquisition of equipment, materials, or the like. Instances where discretionary decisions have been made in this regard refer largely to the government employees' decisions on which protective helmets to use and how to use them, whether to build a wall enclosing a gymnasium five or ten feet away from the end of a court, and or whether the political subdivision should and has the right to acquire a piece of property by eminent domain. Thus, this grant of immunity is inapplicable to this case.

However, [the Village] may have engaged in discretionary policy-making, planning, or enforcement. "The state cannot be sued for . . . the exercise of an executive or planning function involving the making of a basic policy decision which is characterized by the exercise of a high degree of official judgment or discretion." *Reynolds v. State, Div. of Parole & Community Servs.,* 14 Ohio St.3d 68, 471 N.E.2d 776 (1984), paragraph one of the syllabus. But before a court can determine whether a political subdivision is immune, the court must consider the duties and responsibilities of the employees whose actions are at issue. *Elston*,

supra, at 321. A political subdivision cannot simply assert that all of its decisions are "discretionary" in order to obtain protection under R.C. § 2744.03(A)(3). * * *

Here, the court finds that [the Village] engaged in no policy-making, planning, or enforcement when it exercised its discretion to file suit against [Trails End]. Yes, it was a matter of discretion when those involved in this matter decided it was prudent to file a complaint against [Trails End]. However, no part of that exercise in discretion enhanced the development of [the Village], and there were no laws to enforce by filing the instant complaint. And if perception is to be believed, the only policy which [the Village], by virtue of its employees, may have established or engaged in by filing the instant Complaint is one of retaliation. It was not the General Assembly's intent to protect a political subdivision in through (sic) all of its discretionary conduct, and the Court finds that the decision to file the instant Complaint was not one which falls under those protections.

Finally, the court found "no cause to review its previous decision regarding the grant of sanctions under Civ.R. 11."

{¶ 27} The court then referred the matter to the Magistrate to conduct a hearing on damages, and a hearing was scheduled for May 8, 2014. On May 2, 2014, the Village filed a "Motion in Limine and Objections to Proposed Evidence." The Village asserted that the timesheets and invoices submitted by Trails End reflect "time expended in ¼ hour increments," and that the timesheets and invoices "require this Court to speculate as to how much actual time was expended on any particular item of work by the attorney."

After citing 23 "specific references" in various billing entries, the Village asserted that "a great deal of the time expended by defense counsel relates to matters that had nothing whatsoever to do with the issues that had previously been defined and raised by [Trails End]. * * * [Trails End] simply wanted to go on a fishing expedition to try to find something that [the Village] may have done incorrectly in order to divert attention from the frivolous action that they had filed in 2011." The Village asserted that the entries should not be considered by the court.

{¶ 28} On May 7, 2014, Trails End filed "Defendants' Memorandum in Opposition to Plaintiff's Motion in Limine." Trails End asserted that the Village's "objection to a quarter-hour billing increment on the basis that it may result in overbilling ignores the fact that any form of incremental billing may result in overbilling." Trails End asserted the "fees at issue are those incurred by Trails End in defending itself against this frivolous action filed by Plaintiffs."

{¶ 29} At the damages hearing, the Magistrate indicated that she would withhold judgment on the motion in limine until after the hearing. Don Richard Smith testified that he is "charged with representing the Trails End Lounge in their business affairs for the most part, including contacting Taft to represent us." He stated that he is empowered to act on behalf of Trails End on legal matters. He stated that Trails End entered into an hourly fee agreement with counsel, and that all of the bills received by Trails End have been paid. On cross-examination, Smith stated that he was advised that the Village only sought to recover $2,500.00 for their insurance deductible by means of their lawsuit. Smith stated that he attended the depositions of the City Manager, George Markus, and the Zoning Compliance Officer for the City.

{¶ 30} Timothy Pepper testified that he is lead counsel for Trails End. He stated that he has "been practicing litigation in the Dayton area for about 15 years." When asked how the hourly rates of his firm compare to other firms in the community, counsel for the Village stated, "If I might interject, if you just state your rates, I think I'll stipulate that your rates are reasonable and fair for an hourly rate." Pepper stated that his hourly rate for the majority of his work at issue was $290.00, and that the hourly rate for the principal paralegal on the case was $170.00. He stated that an associate attorney's rate at his firm was "195'ish." Counsel for the Village stipulated to the reasonableness of the hourly rates.

{¶ 31} Pepper stated that he has had prior experience in determining the reasonableness of attorney fees "as counsel to both plaintiffs and defendants in prior cases." He stated that he began representing Trails End in May, 2012. When asked about the fee agreement with Trails End, Pepper testified as follows:

> The firm bills by the hour for engagements like this. And so the agreement with the Trails End Lounge was that we would record our time spent, all the timekeepers that worked on the matter would, not everyone in the firm who works on a case is a timekeeper quote unquote that would record his or her time. But for those who do, we would record the time. I would review the bills or the potential bills, make any adjustments I thought were necessary to make sure that the bills were fair and reasonable and then pass them on to the client, which they would then pay in due course. * * *

Pepper stated that in adjusting the bills, he only adjusts downward. For example, he testified, if "we're working on a motion and someone spent an hour doing something that

I thought was more appropriately done in a half an hour, I'll mark it to half an hour. Including my own time."

**{¶ 32}** Pepper stated that as the case went on he "grew uncomfortable with the amount of money that I was asking them to pay. So I changed my practice in the sense that I started to not bill them for large amounts of time that was spent by my firm in representing them." Pepper testified that his "later bills in the case do not reflect all of the hours worked. They reflect a portion of the hours worked * * *." Pepper stated that "all of this attorneys' fees litigation that we're going through right now, the motion for the fees and then this proceeding and everything ancillary to it is not being billed."

**{¶ 33}** When asked how his firm determines the hourly rates for lawyers and staff, Pepper responded as follows:

There's an annual review process we undergo where we take everyone's current hourly rate, we gather what information we can about the market to look at what our peer firms are doing, we look at each individual timekeeper's experience and what that person can offer to clients. And then just make a decision on what the appropriate value is for that person's time by the hour.

**{¶ 34}** Pepper identified as Exhibit A "the fee statements that my firm sent to the Trails End Lounge for work done in connection with the defense of this case," and he stated that they were created in the regular course of business. He identified as Exhibit B "a summary of the invoices that are contained in Exhibit A." Pepper testified as follows regarding Exhibit B:

* * * And so what we have on the chart is left-hand side (sic) is the

invoice number, it's a seven digit number. You'll find that same number on the first page of each invoice in Exhibit A. And then next to that is the date of the invoice and the amount of the invoice that is connected to this litigation and is therefore being sought to recover. So for example, the first four invoices all pertain to this litigation. So we're asking for the entire amount from those invoices. The fifth one down, only some entries from that invoice pertain to this case. So we're only seeking recovery for the entries that are called out there in the chart.

The reason why there's work in the invoice that doesn't pertain to this litigation, Your Honor, is that there were - - this dispute between the Trails End and this family and the Village of New Lebanon encompasses a range of things. There are criminal charges that were brought against them. There are a couple other zoning issues that were not directly related to the litigation at hand. So that's why there are entries on that December 20, 2012 bill that don't pertain to this case.

Once it became apparent how broad the dispute was going to be between the parties, I created separate billing matters in my accounting system so that other time for other matters never touched these bills.

* *

And then the last one there is the final bill. There's a chunk of time between the next to the last and the last bill. The reason for the chunk of time in there is that that was the period of time where I was just growing increasingly uncomfortable with the amount of money that these people

were being required to pay. I did not bill them for quite a while and then in September of 2013, I did issue one final last bill, which is what's reflected there.

**{¶ 35}** Pepper stated that he sought $24,622.85 in fees as reflected in Exhibit B, an amount which he stated is the result of reasonable and necessary work. Finally, Pepper identified as Exhibit C "a report generated by my accounting system that reflects the payment history for this matter." According to Pepper, "what the chart concludes is that all the invoices that were sent from Exhibit A were paid by the client."

**{¶ 36}** On cross-examination, when asked if the issues raised in Trails End's complaint involved "a zoning issue, a fire code report and a charge for mowing that was added to their taxes," Pepper responded, "It's not a yes or no question. Those were incidents that were alleged in the complaint. There were other matters that really related to the filing of that previous lawsuit * * *." According to Pepper, "there were other things, other interactions between the Village and the Trails End that were a part of the reason for filing that case," and the "allegations in the complaint were not an exhaustive list of all the things that were going on at the time." Pepper stated that in filing a complaint, "it's necessary to allege enough to have the background to state a claim. It's not necessary to have the complaint contain a complete recitation of all the facts." Pepper stated that he reviewed the complaint, which was filed by Trails End's previous counsel, and "it didn't surprise me that the complaint wasn't an exhaustive compendium of all possible facts."

**{¶ 37}** Pepper testified that his "understanding is that there's been a history of what the Trails End would call police harassment of the lounge. Of police activity that is out of the norm and that in their view is aimed at harassing them." He testified that the

initial complaint filed by Trails End was "dismissed almost immediately. There was no discovery in that previous case. There was no opportunity in the previous case for the Village to learn what all the other underlying things were because the case never got off the ground." Pepper stated that he denied the allegations in the complaint filed by the Village, and that Trails End did not file a counterclaim alleging harassment against the Village because "my clients were so sick of litigation, they were so sick of the whole dispute, they wanted to find a constructive way to move forward. They didn't think litigation was the way to go."

**{¶ 38}** Pepper acknowledged that at a meeting on July 18, 2012, the Village indicated that it was willing to settle the matter for $2,500.00, and that at that time, Trails End had spent over $4,000.00 in attorney fees. Pepper indicated that although the initial pleadings herein do not reference police harassment, that "doesn't mean it wasn't a factor in the case." Pepper stated that "the Village's complaint in this case that brings us here today alleged that my clients abused process and filed a malicious case against your client. Motivation matters. * * *And so if you're going to make those allegations against them, one has to look at the whole spectrum of what was going on on their side of the fence when they filed that first case. And that's why the police issue is relevant to this case. That's why we deposed Chief Dalton and Officer Chambers."

**{¶ 39}** When asked to agree that there's never been any indication or allegation to the Village of police harassment, Pepper responded as follows:

> * * * I think it was a topic of conversation in the meeting that we had
> in my office. You and I on that July 18th meeting. * * * I also know that my
> clients have spoken directly with people from the Village and those

conversations have not involved me or you. * * * There's been communication to the officers that show up multiple times every night asking why are you parked in front of our lounge? There's been other communications with Mr. Marcus I believe about this. * * * But I do believe that if the Village's position is that it had no idea that police harassment was a problem, I would not agree with that.

**{¶ 40}** Pepper testified that he conducted extensive discovery with respect to the alleged police harassment, including subpoenaing the call reports from the Brookville dispatcher. He stated that he questioned the chief of police in deposition about the "bar checks" that he performs in the Village. Pepper stated that he subpoenaed the personal emails of Village employees, including the Village Manager, because "the public records request that I initially made to begin the discovery process in this case produced a number of emails from Village employees that I had requested. And what I noticed on those emails is that Village employees also used their personal email accounts to conduct Village business." Pepper stated that "once I observed that Mr. Marcus and * * * Mr. Lunsford, who's the zoning inspector, were using their personal email for business purposes, yes, I requested their personal email only as it pertains to the Trails End Lounge. The subpoenas I issued for personal email were highly specific, Trails End only * * *." Pepper stated, "I never sought a court order to have any kind of forensic exam done of computers, I just issued a subpoena and then I took your word for it, Ron, when you produced documents that you said were responsive."

**{¶ 41}** The following exchange occurred:

> Q. Is it accurate to say that the zoning matter that was enumerated

in your client's original complaint had been disposed of by a no contest plea, a finding of guilty more than a year before your clients filed their first complaint?

\* \* \*

A.   \* \* \* My recollection is that the zoning issue that we're talking about and for the most part is grass cutting.   Grass being too high.   My recollection of it is that part of the harassing course of conduct that ends up \* \* \* bringing us here to today is that the Village charged the owners of the Trails End over and over and over and over again with criminal violations because the grass was too high. \* \* \*

\* \* \*

Q. - - unfortunately that's the way the statute's written.

A.   Well - -

Q.   Which was all resolved with one - - it was all plea bargained to one violation.

A.   Right. So to answer your question a little more succinctly then, yeah, the Village for whatever reason chose to charge my client's criminally every day, day after day after day, until the grass got cut.   And in my experience, and I think in my client's experience, that's not typically a grass cutting code is enforced (sic).

It certainly wasn't the experience of the Judge in the case because the Judge instructed your colleague Ryan Bronk, the Prosecutor, to never ever do that again.   And so yes, there was a plea to one charge \* \* \*.   \* \*

\* That \* \* \* whole episode of let's charge them every day and see how many criminal charges we can tack on, that was a part of the motivation to file that first lawsuit.

{¶ 42} According to Pepper, "in addition to the criminal charges regarding grass cutting, there were either threats for criminal prosecution or actual criminal citations issued for alleged noise problems at the bar. And that was another motivating factor in that first lawsuit." He testified that "there were many, many instances where police officers would come into the lounge and tell whoever was working behind the bar that the music was too loud, it needed to be turned down." According to Pepper, the "issue here was that when the officers would come in, often they would actually admit to Shelly Singleton who would often be behind the bar, that they were there at the direction of others. They were there at the direction of Mr. Marcus in particular to go cite the Trails End Lounge." Pepper acknowledged that he did not observe or overhear such conversations. He stated that "there were two actual criminal charges and dozens of warnings from officers" to turn the music down.

{¶ 43} Pepper stated that while there were no criminal charges brought on fire code violations, there is "quite an extensive report from a fire inspector of things that the fire inspector had a problem with." Pepper stated, "I don't know for a fact as I sit here that the Trails End did every single thing that was asked of it because there were things that were asked of it that were not in violations (sic) of the code. \* \* \* And again, in an effort to be constructive and positive and have a good relationship, many things were done that were not necessary."

{¶ 44} Pepper stated that if "we were to take the time to go through Exhibit A, you

would see that I delegate to the lowest possible timekeeper everything in an effort to keep the bill down," and he indicated that his paralegal drafted the answer and discovery requests herein. Finally, Pepper acknowledged that on an invoice dated September 13, 2013, "there's a December 18th, 2012 time entry with the initials VMM," who Pepper stated is his paralegal. He acknowledged that the 2.25 hours that his paralegal spent on the work reflected on that time entry does not relate to this litigation, and he withdrew the item from his request for fees. Pepper stated that he makes "every possible effort to not ever bill time if someone else in my firm is billing for that same time" with the same client. At the end of the hearing, the Magistrate admitted the exhibits and granted the parties time to file post-hearing briefs.

{¶ 45} On May 22, 2014, "Plaintiff's Brief Following Damage Hearing" was filed. According to the Village in part, "a vast bulk of the time expended relating to the instant litigation was not in developing a defense which would support the charges that Defendant made in the prior litigation when Defendant asked for a temporary restraining order and a preliminary and permanent injunction." The Village asserted that Trails End never responded to the Village's motion for summary judgment, and that the Motion "was not ruled upon prior to [the Village] dismissing its action." The Village asserted that Trails End "elected not to proceed in a reasonable manner by submitting a Motion for Summary Judgment but elected to proceed in an unreasonable manner by the inordinate amount of time and effort put into the itemization set forth on Defendant's Exhibit A." Finally, the Village's post-hearing brief provides: "is it ever reasonable to expend $20,000.00+ to defend litigation over a contested amount of $2500.00?"

{¶ 46} Trails End filed "Defendants' Post-Hearing Brief on Fees" on May 22, 2014,

asserting that it sought $24,172.26 in fees. According to Trails End, the Village's characterization of the matter as a " '$2,500.00 case' is incorrect. A cursory review of [the Village's] Complaint demonstrates that [the Village] demanded $25,000.00, plus attorney fees and costs in this action. Only later, after discovery had commenced and [the Village] learned that [Trails End] would not be extorted, did the Village drop its demand to $2,500.00." Trails End noted that it withdrew the unrelated time entry at the hearing.

{¶ 47} The Village filed "Plaintiff's Reply Brief" on May 28, 2014, and Trails End filed "Defendants' Response to Plaintiff's Brief Following Damages Hearing" on the same day.

{¶ 48} After reviewing the testimony from the hearing, and the law governing an award of attorney fees, the Magistrate, based upon the stipulation of the parties, accepted that the hourly rates of the timekeepers at Pepper's firm "are reasonable and within market values for the Dayton legal community." The Magistrate found that "the hours actually expended by the time-keepers at the Taft Firm exceed (to at least a small degree) the amount of work billed to the client." The Magistrate noted that the "Lodestar amount" as reflected in the invoices is $24,172.26, which is obtained by "multiplying the number of hours spent by each time keeper by his or her hourly rate." The Magistrate noted that no argument was raised by the Village that the bills were duplicative or that excessive time was spent on a particular task, so "no adjustment of the Lodestar figure is needed for these reasons."

{¶ 49} The Magistrate next considered the Village's "claims that the fees are unreasonable in relation to the amount in controversy and that the legal work performed

was not related to the specific allegations in the underlying complaint, and she considered whether "adjustment of the Lodestar figure is required by other factors set forth in Rule 1.5 of the Ohio Rules of Professional Responsibility." That rule provides the following factors for consideration in determining the reasonableness of a fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers preforming the services;

(8) whether the fee is fixed or contingent.

{¶ 50} Regarding the time and labor required, the novelty and difficulty of the questions and the requisite skill to properly perform the legal services, the Magistrate determined that no adjustment to the Lodestar amount was warranted as follows:

The Magistrate notes that [the Village] has objected to the amount of time expended by [Trails End's] counsel for discovery related to the alleged

harassment of [Trails End] by City of New Lebanon Officers. The Magistrate notes that the police were not specifically named as Defendants in the underlying action. However, the underlying action did contain a "catch all" for unknown defendants and alleged generally interference with the business and harassment against all parties. Thus, had discovery occurred in the underlying case, it is likely that these facts would have been developed in that litigation. Because that case was dismissed prior to the completion of extensive discovery, it was reasonable and necessary for [Trails End] to develop the facts of the underlying action in this case. [Trails End was] accused of frivolous conduct and malicious prosecution – thus, said factual development was necessary to defend against [the Village's] claims.

**{¶ 51}** The Magistrate concluded that factors two and three above did not require an adjustment of the Lodestar amount. Regarding the amount involved and the results obtained, the Magistrate noted that counsel for Trails End "obtained excellent results – i.e. dismissal of the claim" against Trails End. The Magistrate found that although "the monetary amount in controversy was small (i.e. $2,500.00), [Trails End] previously felt that they had been harassed by [the Village]. Thus, [Trails End] arguably had more at stake than $2,500.00 and, under the totality of the circumstances, it was reasonable for them to continue to contest [the Village's] allegations." The Magistrate concluded that the fourth factor did not warrant a change in the Lodestar amount, and she further concluded that the remaining factors did not warrant an adjustment. She awarded Trails End $24,172.26 in fees.

**{¶ 52}** The Village filed "Objections to Magistrate's Decision of July 28, 2014" on August 8, 2014, and "Supplemental Objections to Magistrate's Decision of July 28, 2014," on September 25, 2014. The Village asserted that the "Magistrate's Decision makes reference to prior Decisions of the Court relating to conclusions and, to the extent that this Magistrate accepts, adopts, ratifies or condones any Findings of Fact previously made or referenced by the Court, [the Village] objects." The Village asserted that "for more than a year there was nothing going on with respect to any zoning violations," and that "it must be recognized that the Fire Department worked with [Trails End] for almost a year before all of those alleged Fire Code violations were resolved and during that year, filed absolutely no citations whatsoever nor was any action taken to shut down the business or do anything regarding the business." The Village asserted that it was only aware of "the three allegations" set forth in Trails End's complaint, and that the Village's complaint was addressed "to those three specific allegations." The Village asserted that there "is neither factual nor legal basis nor foundation to treat [Trails End's] previous case as being an appeal," since the zoning violation had been resolved more than a year prior to the filing of Trails End's complaint. The Village asserted that the trial court "has focused solely on the issue of the allegation of malicious prosecution and has failed to totally consider the issue of [Trails End's] prior case being a frivolous claim." The Village asserted that "the Court indicated, in its September 26, 2013 Decision, that '[The Village] did not have its person, its actions, nor its property seized.' Although there was no Order issuing a temporary or permanent injunction against [the Village], [the Village's] actions were, in fact, immediately inhibited by virtue of the filing of Defendant's Complaint."

**{¶ 53}** Regarding the Magistrate's conclusions of law, the Village asserted that

"the elements of determination of what is a <u>reasonable</u> attorney fee must consider what issues are clearly defined by the pleadings and not what issues may be in the mind or perception of one of the parties. * * * [T]he Police Department was not named as a party-defendant in [Trails End's] initial Complaint * * *."  The Village asserted that Trails End failed to amend their complaint or to "allege in an Answer that there were 'justifications' for bringing the initial Complaint that went beyond the allegations specifically set forth in that Complaint."  The Village noted that Trails End did not file a counterclaim, and that there "were no assertions or allegations pled relating to the Police Department actions, the Building Code inspections or anything else that was relevant to the subject matter as defined by the pleadings."  The Village asserted that contrary to Pepper's assertion, he subpoenaed all of the personal emails of several employees, and not just those addressed to Trails End.  Finally, the Village directed the court's attention to its Motion in Limine and asserted that the work performed was unreasonable.

{¶ 54} In its supplemental objections, the Village asserted that Trails End's "extensive discovery and extensive compilation of time for attorney fees to try to justify the filing of a frivolous Complaint * * * revealed no facts whatsoever that actually resulted in a justification."  According to the Village, "the information learned through that entire discovery, * * * did not rise to the level of indicating any harassment or course of action that could, in any way, justify the filing of an action for a restraining order against a municipality restraining that municipality from enforcing the law."  The Village asserted that although "discovery is permitted to be very liberal, it does not mean that all discovery is immediately admissible during the court proceeding.  It must be related to the allegations of the Complaint."

{¶ 55} Trails End filed "Defendants' Response to Plaintiff's Objections, and Plaintiff's Supplemental Objections to the Magistrate's Decision" on October 9, 2014. Trails End asserted as follows:

[The Village] is now attempting to re-litigate the fee award issue, primarily by way of arguments about prior litigation. The issues in the prior litigation are irrelevant to the fee award issue before the Court today. As this Court has explained in detail, the fatal defects in [the Village's] claims in this case have nothing to do with [the Village's] understanding (flawed or otherwise) of the previous litigation. In other words, [the Village's] conduct in filing the claims in this case is not excusable simply because [the Village] may have believed that a prior case was frivolous. [The Village] could have moved for sanctions in that prior case pursuant to Ohio Rev. Code § 2323.51 if [the Village] thought the [Trails End] acted frivolously in that case. Instead, [the Village] filed the separate and independent tort claims at issue in this case, well after the previous litigation ended, and the Court has already determined that [the Village] acted inappropriately in doing so.

{¶ 56} In overruling the Village's objections, the trial court determined in part as follows:

**B. Objection 1: The Magistrate is in error on six separate findings of fact used in the Magistrate's Decision.**

Having reviewed the Magistrate's decision, the motions and memorandum of the parties, and the transcript of the proceedings, the court finds [the Village's] first objection without merit. [The Village], once again,

attempts to argue the merits of the case by objecting to six separate factual findings. The first three factual findings made by the Magistrate implicate that the original complaint likely encompassed more facts than those specifically stated in the original complaint:  zoning issues, charges for mowing grass, and fire inspection reports.   The second three factual findings made by the Magistrate are wholly adopted from the previous decision of this Court. The Court will address the flaws of each group separately.

*(1)   [The Village] objects to the Magistrate's findings of fact that the complaint in the original action could have included more factual allegations than what was specifically alleged.*

As the objection relates to the first three factual findings, [the Village] continues to argue that the complaint in the underlying case failed to adequately state a claim and was unsupported by probable cause. Although [the Village] uses these facts to justify its own actions, the argument truly relates to [the Village's] ability to prove [Trails End's] malicious intent in filing the original complaint and the scope of expected discovery in the instant matter.   [The Village] even states in its objection: "It was alleged [in [the Village's] Complaint] that, as to the specific allegations made by [Trails End] in [Trails End's] Complaint, [Trails End's] Complaint constituted a frivolous action.   There was no way for [the Village] or anyone else to know any other factual allegations supporting Trail E[n]d's causes of action."   This is exactly the Court's point.

{¶ 57} After noting that Ohio "is a notice pleading state," and that Ohio law accordingly does not require operative facts to be pled with particularity, the court again noted that Trails End's complaint alleged that the Village harassed Trail's End and interfered with its ability to operate its business. The court noted its previous finding that the Village was put on notice that Trails End, "at the very least, alleged claims for harassment and abuse of power." Since the initial litigation ended so quickly, "neither party could have actually determined the whole scope of the proceedings, nor was it decided whether the pleading could have survived a motion to dismiss." The court further noted that there "was no time to file motions for a more definite statement, motions to amend pleadings, or to adjudicate the matter on the merits. Therefore, after the voluntary dismissal of the underlying action, there was no way to determine the full scope of the case and complaint."

{¶ 58} The court further determined as follows:

* * * Mr. Pepper[] testified at the Magistrate's hearing that not all of the facts forming the basis of the suit were alleged in the Complaint. Mr. Pepper testified that Defendants were reportedly "harassed" by the police for allegedly unfounded noise violations, and in the course of his investigation into the former action he investigated [Trails End's] interaction with the local police. This Court agrees with the Magistrate's finding that it is extremely likely that these facts would have been discovered, had the case carried on more than three months. However, since no discovery took place, and [Trails End] decided to completely drop the underlying lawsuit, those facts stayed hidden until [the Village] filed the instant matter.

This Court agrees with the Magistrate's finding that it was reasonable and necessary for [Trails End's] counsel to develop the facts of [Trails End's] underlying action. Evidence of further harassment, including unfounded noise violations, would be necessary to defend against [the Village's] claim of malicious prosecution.

Based on the procedural history of the underlying case, and the necessity of the Defendants to develop their defense for the instant matter, the Court finds [the Village's] objections to the first three findings of fact are without merit.

{¶ 59} The court then addressed the Village's remaining objections to the Magistrate's factual findings as follows:

*(2) [The Village] objects to the Magistrate's findings of fact as they are adopted from this Court's previous decision.*

[The Village's] fourth, fifth and sixth facts to which it objects all relate to facts found by this Court. * * *

* * *

[The Village's] actual objections to each of the three facts are as follows: (1) objection to the characterization of the underlying complaint being an attempt to appeal the citations, (2) objection to the Court's focus on the instant matter rather than adjudicating [Trails End's] underlying complaint, (3) objection to the Court's finding that [the Village] did not suffer a seizure of its person, its actions, or its property in the underlying litigation. The court will not reconsider, for a third time, its findings.

**{¶ 60}** The court noted that Civ.R. 11 and R.C. 2323.51(B) provide remedies for victims of frivolous conduct, and that a meritless lawsuit can be addressed within the lawsuit itself.   The court noted that neither party prevailed in the initial lawsuit, and that the Village could have addressed Trails End's alleged frivolous conduct therein 30 days after the voluntary dismissal, pursuant to R.C. 2323.51(B)(1).   The court found that the Village "knew or should have known that the elements for malicious prosecution differ than (sic) the requirements for a motion for fees based on frivolous conduct" and that "even if the Court assumed every single word of its Complaint was true, there was no factual or legal basis for at least two, likely three, of the four elements of malicious prosecution." Finally, the court found that the Village "knew or should have known that it could not, in good faith, argue for a drastic change in law established by the Ohio Supreme Court on three of the four elements of malicious prosecution.   [The Village's] objections to the findings of fact adopted from the Court's own decision are without merit."

**{¶ 61}** The court continued as follows:

***C.    Objection 2:    The Magistrate erred when she concluded that [Trails End's] lodestar amount was $24,172.26.***

\* \* \*

***(A) Calculation of the lodestar amount.***

[The Village] argues that this matter was a simple case, and that the attorneys fees far outweigh the amount in controversy, which it alleges is two thousand five hundred dollars \* \* \*.   \* \* \* However, the Court is mindful that even a "simple" case can prove difficult when the plaintiff is met with vigorous and professional opposition. \* \* \*

Here, [the Village] may believe that the defense of its singular claim should have been simple, but when mounting a defense over one-year's span any defense can become more intricate. Mr. Pepper testified at the hearing that he and his staff conducted more work than that which was billed to his client on this matter. * * * The court finds that the time accounted for on the billing statements is an accurate amount of time expended on this case. Except for a singular entry for an alternative matter which amounted to $450.59, the Court finds that the lodestar amount for all work related to this, $24,172.26 (sic).

In review of the transcript and exhibits, no particular hour billed was duplicative.

In review of the transcript and exhibits, no particular hour billed was extraordinary or excessive.

Therefore, the Court agrees with the Magistrate's conclusion that the lodestar amount for the Defendant's attorney fees is $24,172.26.

{¶ 62} The court next considered whether the lodestar amount was subject to adjustment. After setting forth factors in Rule 1.5 of the Ohio Rules of Professional Conduct, as set forth above, the court addressed the first factor and noted that extraordinary skill or specialty in the law was not required in the case, and that the issue was not novel, and thus, the court "is left to consider the time and labor required to adjudicate the matter." The court noted that the Village objected to invoices addressed to the discovery of alleged harassment by the police and Village as an unreasonable expenditure of counsel's time. The court further noted that "[c]ourts have always

recognized that while matters may not be admissible evidence in a civil proceeding, it does not preclude the matter from being discovered through discovery procedures. The Ohio Civil Rules provides (sic) procedures in which attorneys are permitted to investigate both the favorable and unfavorable aspects of each case. Civ.R. 26(A)." The court noted that parties "are permitted to obtain information regarding any matter that is relevant to the subject matter involved in the pending action. Civ.R. 26(B)(1)." The court found that just "because the underlying litigation ended before these facts could be discovered through interrogatories and deposition, does not preclude [Trails End] from pursuing these facts as a defense to the instant matter. Therefore, the Court concludes, as the Magistrate did, that [Trails End's] attorney's fees were a necessary and reasonable expenditure of fees."

{¶ 63} Finally, the court concluded as follows:

The fourth factor set forth by Rule 1.5 requires the court to consider the amount involved in the instant action and the results obtained. The Complaint alleges the amount in controversy to be $25,000.00 plus attorney fees and costs incurred in the prosecution of the instant action. * * * [The Village] argues that the true amount in controversy is $2,500.00, an insignificant number in comparison to [the] amount expended on attorneys fees. However, the court concludes, as did the Magistrate, that [Trails End] arguably had more at stake than $2,500.00 having felt harassed by [the Village]. The Court notes that [Trails End] also received excellent results in this respect, since the claims against [Trails End] have been dismissed. Thus, the court concludes, as the Magistrate did, that the lodestar amount

does not need to be adjusted to be contemporaneous with the amount in controversy and the result obtained.

In consideration of all other factors, the Court finds that the remaining factors do not warrant a change in the lodestar amount.

### III. CONCLUSION

Accordingly, based on the foregoing, [the Village's] Objections to the Magistrate's Decision are hereby OVERRULED in their entirety. The Magistrate's Decision is hereby ADOPTED. The lodestar amount of $24,172.26 is hereby awarded to [Trails End] as justifiable attorney's fees.

**{¶ 64}** On September 29, 2015, this Court issued a Decision and Entry noting that Exhibits A, B, and C from the damages hearing before the Magistrate were not included in the record on appeal. Pursuant to this Court's order issued in the September 29, 2015 Decision and Entry, the Village moved the trial court to determine whether the exhibits were mistakenly omitted from the record. On October 21, 2015, the trial court issued an "Order and Entry Finding Exhibits A, B, and C were Mistakenly Omitted; Order that Exhibits be made part of the Record." Exhibits A, B, and C are included in the record before us.

**{¶ 65}** The Village asserts five assignments of error. For ease of analysis, we will first consider the Village's fourth assignment of error. It is as follows:

THE COURT BELOW ERRED IN DETERMINING THAT THE PROVISIONS OF THE OHIO REVISED CODE DEALING WITH SOVEREIGN IMMUNITY DO NOT APPLY TO THE VILLAGE OF NEW LEBANON.

{¶ 66} The Village asserts that R.C. 2744.03(A)(2) and (5) apply and that the actions of the Village are protected by political subdivisison immunity. R.C. 2744.02(A)(1) provides: "* * * a political subdivision is not liable *in damages in a civil action* for injury, death, or loss to person or property allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision in connection with a governmental or proprietary function." (Emphasis added). R.C. 2744.03(A) provides: *"In a civil action* brought against a political subdivision * * * *to recover damages* for injury, death, or loss to person or property allegedly caused by any act or omission in connection with a governmental or proprietary function, the following defenses or immunities may be asserted to establish nonliability:" (Emphasis added).

{¶ 67} We need not address the enumerated defenses and immunities in R.C. 2744.03. Civ.R. 3(A) provides: "A civil action is commenced by filing a complaint with the court * * *." The immunity conferred by the above statutes specifically applies in civil actions initiated against a political subdivision or its employees for damages, and not to Trails End's motion for attorney fees pursuant to R.C. 2323.51. Accordingly, the Village's fourth assignment of error is overruled.

{¶ 68} We will next consider the Village's second and third assigned errors together. They are as follows:

THE COURT BELOW ERRED IN RULING THAT THE INSTANT MATTER, [THE VILLAGE COMPLAINT] CONSTITUTED A FRIVOLOUS CLAIM,

And,

THE COURT BELOW ERRED IN DETERMINING THAT

PLAINTIFF/APPELLANT KNEW OR SHOULD HAVE KNOWN IT COULD NOT PROVE ALL OF THE ELMENTS OF MALICIOUS PROSECUTION AND/OR THAT THERE WAS NO GOOD FAITH ARGUMENT FOR MODIFICATION OR REVERSAL OF EXISTING LAW.

{¶ 69}  In its second assigned error, the Village asserts that Trails End's complaint "did directly fall within the definitions included in R.C. Section 2323.51(B)(1)," and "the trial court erred in categorizing the actions of [the Village] as being a frivolous claim."   In the third assigned error, the Village asserts that Trails End's complaint was "an effort to restrain and enjoin a governmental agency from enforcing the law." According to the Village, although Trails End's complaint "doesn't necessarily fit within the normal parameters of what constitutes a malicious action, there should be some recourse for the filing of actions which, on their clear face, are aimed at inhibiting the enforcement of the laws of the land."   The Village directs our attention to *Lemieux v. Central Oil Field Supply Co. of Logan,* 11th Dist. Ashtabula No. 89-A-1479, 1990 WL 128277 (Sept. 7, 1990), and asserts that "although current law as it relates to 'seizure' relates to the actual seizing of money or property, it is submitted that a 'property' of the Village of New Lebanon is the right to enforce the law.   It is agreed that no injunction or restraining order had yet been issued but the mere filing of the action requesting that relief inhibits the Village from enforcing its laws and therefore, does 'seize' that right of enforcement."   The Village asserts that its action against Trails End was a "viable action which, had the matter proceeded to trial, would have * * * been successful.   Only the mitigation of damages by recovering from a secondary insurance company removed the matter from further action." Finally, the Village asserts that the trial court "may have concluded that the allegation of

malicious use of process did not meet the current criteria as set forth by existing case law but it is error to fail to recognize [the Village's] Complaint as a good faith argument for modification or reversal of that case law."

{¶ 70} Trails End responds that the Village "waived its right to appeal the award of attorney fees pursuant to Ohio R. Civ.P. 11 by failing to raise the Rule 11 issue in its initial brief. The Village did not present an assignment of error regarding the Civil Rule 11 sanction." Trails End further asserts that the trial court properly found the Village engaged in frivolous conduct under R.C. 2323.51, and that the Village was not engaged in a good faith effort to change the law.

{¶ 71} In Reply, the Village notes that the trial court, in its decision of September 26, 2013, determined that Civ.R. 11 was violated and ordered the parties to " 'show cause as to why costs, including attorney fees and expenses of defending the suit, should not be awarded to Defendant.' " The Village asserts:

No further word was heard from the Court with respect to Rule 11 sanctions except in the Decision and Order of February 21, 2014 where, in the Conclusion, the Court indicates that "the Court finds no cause to review its previous Decision regarding the grant of sanctions under Civil Rule 11." There never has been a definition or a clarification of what sanctions the Court was referring to. The language of Rule 11 provides that the party "may be subjected to appropriate action." There is no obligatory obligation to impose any particular sanctions and in the case at bar no specific sanction or imposition of attorney fees was ever referenced as it relates to Civil Rule 11. It is submitted herewith that Appellant cannot appeal from

something that does not exist. The mere finding that there was a Rule 11 violation does not, in and of itself, require sanctions and does not, in and of itself, define those sanctions.

**{¶ 72}** As this Court recently noted:

"The imposition of a sanction under Civ.R. 11 requires a determination that the attorney filing the pleading: (1) has read the pleading; (2) harbors good grounds to support it to the best of his or her knowledge, information, and belief; and (3) did not file it for the purposes of delay." (Citation omitted.) *Nat'l Check Bur. V. Patel*, 2d Dist. Montgomery No. 21051, 2005-Ohio-6679, ¶ 14. "If any one of these requirements is not satisfied, the trial court must then determine whether 'the violation was "willful" as opposed to merely negligent.' " *Ponder v. Kamienski*, 9th Dist. Summit No. 23270, 2007-Ohio-5035, ¶ 36, quoting *Ceol v. Zion Indus. Inc.*, 81 Ohio App.3d 286, 290, 610 N.E.2d 1076 (9th Dist. 1992). "If the trial court finds that the violation was willful, it may impose an appropriate sanction." (Citation omitted.) *Id.*

*Namenyi v. Tomasello*, 2d Dist. Greene No. 2013-CA-75, 2014-Ohio-4509, ¶ 14.

**{¶ 73}** "In contrast, the imposition of sanctions under R.C. 2323.51 requires a finding of frivolous conduct." *Id.*, ¶ 15. R.C. 2323.51(B)(1) provides:

* * * [A]t any time not more than thirty days after the entry of final judgment in a civil action or appeal, any party adversely affected by frivolous conduct may file a motion for an award of court costs, reasonable attorney's fees, and other reasonable expenses incurred in connection with the civil

action or appeal.   The court may assess and make an award to any party to the civil action or appeal who was adversely affected by frivolous conduct, as provided in division (B)(4) of this section.

R.C. 2323.51(B)(4) provides that "[a]n award made pursuant to division (B)(1) of this section may be made against a party, the party's counsel of record, or both."

{¶ 74} As this Court noted in *Namenyi*:

Prior to awarding damages under R.C. 2323.51, the trial court must hold a hearing "to determine whether particular conduct was frivolous, to determine, if the conduct was frivolous, whether any party was adversely affected by it, and to determine, if an award is to be made, the amount of that award[.]" R.C. 2323.(B)(2)(a).   "[W]e note that '[t]he finding of frivolous conduct under R.C. 2323.51 is determined without reference to what the individual knew or believed.' "   *Mitchell v. Mid-Ohio Emergency Servs., L.L.C.*, 10th Dist. Franklin No. 10AP – 374, 2010-Ohio-6350, ¶ 25, quoting *Bikkani v. Lee*, 8th Dist. Cuyahoga No. 89312, 2008-Ohio-3130, ¶ 22. (Other citation omitted.)

*Id.*, ¶ 16.

{¶ 75} R.C. 2323.51(A)(1)(a) defines conduct as the "filing of a civil action, the assertion of a claim, defense, or other position in connection with a civil action, the filing of a pleading, motion, or other paper in a civil action, including, but not limited to, a motion or paper filed for discovery purposes, or the taking of any other action in connection with a civil action."   "Frivolous conduct" is the conduct of a party to a civil action that satisfies in relevant part the following:

* * *

(ii)   It is not warranted under existing law, cannot be supported by a good faith argument for an extension, modification, or reversal of existing law, or cannot be supported by a good faith argument for the establishment of new law.

(iii)   The conduct consists of allegations or other factual contentions that have no evidentiary support, or, if specifically so identified, are not likely to have evidentiary support after a reasonable opportunity for further investigation or discovery.

R.C. 2323.51(A)(2)(a).

**{¶ 76}**  As noted in *Namenyi:*

This Court has previously noted "that the frivolous conduct implicated by R.C. 2323.51(A)(2)[(a)](ii) involves proceeding on a legal theory which is wholly unwarranted in law."  *State v. Auto Mut. Ins. Co. v. Tatone*, 2d Dist. Montgomery No. 21753, 2007-Ohio-4726, ¶ 8.   "Whether a claim is warranted under existing law is an objective consideration."   (Citations omitted.)  *Hickman v. Murray*, 2d Dist. Montgomery No. CA 15030, 1996 WL 125916, *5. The test is "whether no reasonable lawyer would have brought the action in light of the existing law.  In other words, a claim is frivolous if it is absolutely clear under the existing law that no reasonable lawyer could argue the claim."  *Id.*

"[N]o single standard of review applies in R.C. 2323.51 cases." *Wiltberger v. Davis*, 110 Ohio App.3d 46, 51, 673 N.E.2d 628 (10th Dist.

1996). When the question regarding what constitutes frivolous conduct calls for a legal determination, such as whether a claim is warranted under existing law, an appellate court is to review the frivolous conduct determination de novo, without reference to the trial court's decision. *Natl Check Bur.*, 2d Dist. Montgomery No. 21051, 2005-Ohio-6679 at ¶ 10; *accord Riverview Health Inst., L.L.C. v. Kral*, 2d Dist. Montgomery No. 24931, 2012-Ohio-3502, ¶ 33. "Similarly, whether a party had good grounds to assert a claim under Civ.R. 11 also involves a legal determination, subject to a de novo standard or review." (Citation omitted). *ABN AMRO Mtge. Grp., Inc. v. Evans*, 8th Dist. Cuyahoga No. 98777, 2013-Ohio-1557, ¶ 14.

"In contrast, if there is no disputed issue of law and the question is factual, we apply an abuse of discretion standard of review." *Riverview Health Inst., L.L.C.* at ¶ 33, citing *Natl. Check Bur.* at ¶ 11. Likewise, if the trial court determines that a violation under R.C. 2323.51 or Civ.R. 11 exists, the trial court's imposition of sanctions for said violation will not be disturbed absent an abuse of discretion. *State ex rel. Fant v. Sykes,* 29 Ohio St.3d 65, 505 N.E.2d 966 (1987)*; Lewis v. Powers*, 2d Dist. Montgomery No. 15461, 1997 WL 335563, * 4 (June 13, 1997).

*Id.*, ¶18-20.

**{¶ 77}** "A trial court abuses its discretion when the court's attitude was unreasonable, arbitrary, or unconscionable. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597

(1990)." *Bishop v. Bishop*, 2d Dist. Montgomery No. 26397, 2015-Ohio-2711, ¶ 16.

**{¶ 78}** The trial court determined that the conduct of the Village was frivolous pursuant to R.C. 2323.51(A)(2)(a)(ii) and (iii); in other words, its complaint for malicious prosecution was unwarranted under existing law, could not be supported by a good faith argument for a change in existing law, and was without evidentiary support.

**{¶ 79}** As this Court has noted:

In order to state a cause of action for malicious prosecution in Ohio, four essential elements must be alleged by the plaintiff: 1) malicious institution of prior proceedings against the plaintiff by defendant; 2) lack of probable cause for the filing of the prior lawsuit; 3) termination of the prior proceedings in plaintiff's favor; and 4) seizure of plaintiff's person or property during the course of the prior proceedings. *Crawford v. Euclid National Bank* (1985), 19 Ohio St.3d 135, 139.

*Clemmons v. Yaezell*, 2d Dist. Montgomery No. 11132, 1988 WL 142397, *3 (Dec. 29, 1988).

**{¶ 80}** We first conclude that the trial court correctly found that the Village's claim of malicious prosecution was frivolous. "A proceeding is terminated in favor of the accused 'only when its final disposition indicates that the accused is innocent.' * * *." *Malone v. Lowry*, 2d Dist. Greene No. 06-CA-101, 2007-Ohio-5665, ¶ 17. "When a prosecution is terminated by way of a voluntary settlement or agreement of compromise with the accused, it is not indicative of guilt or innocence and thus, is not a termination in favor of the accused." *Id.* Trails End's complaint was voluntarily dismissed and thus the trial court correctly found that the Village's complaint was not warranted under existing

law.

**{¶ 81}** We further find that the trial court did not err in finding that there was no good faith argument for modification of the law, namely the seizure element of malicious prosecution. "A cause of action for malicious civil prosecution will lie only in cases where there is a prejudgment seizure of property, *i.e.,* where there essentially has been a judgment against, and a concomitant injury suffered by, a defendant before he has had a chance to defend himself." *Robb v. Chagrin Lagoons Yacht Club, Inc.*, 75 Ohio St.3d 264, 270, 662 N.E.2d 9 (1996).

**{¶ 82}** The *Robb* Court, in distinguishing between malicious criminal prosecution, which does not include a seizure requirement, and malicious civil prosecution, which does, determined as follows:

We believe that the interests of justice and judicial economy are best served by continuing to require the element of seizure of property in malicious civil prosecution cases. The damages from being sued civilly are of a different character than from being arrested or haled into court on a criminal charge. A person's freedom is not at stake in a civil trial. Civ.R. 12 allows for the quick disposal of meritless claims, and Civ.R. 11 presents the best avenue to deal early, quickly, and effectively with bogus lawsuits. Also, R.C. 2323.51(B)(1) allows for the award of attorney fees to victims of frivolous conduct in a civil case.

We echo this court's concern in [*Crawford v. Euclid Natl.* Bank, 19 Ohio St.3d 135, 483 N.E.2d 1168 (1985)] that removing the seizure requirement from malicious civil prosecution claims would result in an

explosion of claims for malicious prosecution. There are opportunities already built into the civil system to deal with a meritless lawsuit within that same lawsuit, rather than instituting another suit. Every successful summary judgment defendant should not be tempted to file a malicious prosecution claim.

We therefore retain in malicious civil prosecution cases the long-held and well-reasoned requirement of seizure of property, and leave to our Rules of Civil Procedure, or the General Assembly, the method with which to deal with meritless civil claims.

*Id.*, 270. Given the reasoned holding of the Ohio Supreme Court, the Village's conduct cannot be supported by a good faith argument for a modification of existing law.

**{¶ 83}** Finally, we cannot conclude that the trial court erred in finding that the Village's allegations lacked evidentiary support; we note that the parties' Joint Pre-Trial Statement, in a section entitled "Facts Established," provides: "No defendant in Case No. 2011-CV-3635 was subject to any seizure of person or property in the course of, or arising out of, that case."

**{¶ 84}** Since the trial court correctly determined that the Village engaged in frivolous conduct, its second and third assignments of error are overruled. Since the trial court based its award of fees on the Village's frivolous conduct, we need not address the parties' arguments regarding Civ.R.11.

**{¶ 85}** The Village's fifth assignment of error is as follows:

THE COURT BELOW ERRED IN THE CALCULATION AND AWARD OF ATTORNEY FEES.

**{¶ 86}** We initially note:

Pursuant to Civ.R. 53(D)(3)(b), a party who disagrees with a magistrate's proposed decision must file objections to said decision. Claims of trial court error must be based on the actions taken by the trial court, itself, rather than the magistrate's findings or proposed decision. When reviewing objections to a magistrate's decision, the trial court is not required to follow or accept the findings or recommendations of its magistrate. *Breece v. Breece,* 2d Dist. Darke No. 99–CA–1491, 1999 WL 999759 (Nov. 5, 1999); *Seagraves v. Seagraves*, 2d Dist. Montgomery Nos. 15047 and 15069, 1995 WL 559970 (Aug. 25, 1995). In accordance with Civ.R. 53, the trial court must conduct an independent review of the facts and conclusions contained in the magistrate's report and enter its own judgment. *Dayton v. Whiting*, 110 Ohio App.3d 115, 118, 673 N.E.2d 671 (2d Dist.1996). Thus, the trial court's standard of review of a magistrate's decision is de novo.

An "abuse of discretion" standard is the appellate standard of review. * * * Presumptions of validity and deference to a trial court as an independent fact-finder are embodied in the abuse of discretion standard. *Whiting,* supra.

*Lewis v. Lewis*, 2d Dist. Greene No. 2013 CA 68, 2014-Ohio-958, ¶ 10-11.

**{¶ 87}** The Village asserts that the police department was not named as a party and yet "a great deal of time and costs that were expended by Trails End were related to subpoenaing dispatch information, bar checks by the Police Department, depositions of Police Officers, and other such actions." According to the Village, "the only issues that

were involved in this instant action are the specific three items that were set forth with particularity" in Trails End's complaint, namely "the actions of the Zoning Inspector with respect to zoning violation citations and property maintenance regarding mowing of the property and then the report of Fire Code violations by the Fire Inspector." The Village asserts that the fees awarded for time spent on discovery beyond the allegations in the complaint were unreasonable.

**{¶ 88}** Trails End responds that the award is supported by the record, and that once "the Village filed its Complaint, Trails End was entitled to conduct discovery as it best saw fit to defend itself against the Village's frivolous claims." Trails End asserts that "both the Magistrate and the Trial Court considered [the Village's] argument that discovery should have been restricted, [and] they unequivocally found the discovery undertaken by Trails End to be not only reasonable but necessary."

**{¶ 89}** As this Court has noted:

Civ.R. 8(A) requires pleadings to contain "(1) a short and plain statement of the claim showing that the party is entitled to relief, and (2) a demand for judgment for the relief to which the party claims to be entitled." Under Civ. R. 8(A)(1), a plaintiff is only required to plead "sufficient, operative facts to support recovery under his claims. To constitute fair notice to the opposing party, however, the complaint must still allege sufficient underlying facts that relate to and support the alleged claim, and may not simply state legal conclusions." (Citations omitted.) *State ex rel. Rogers v. Republic Environmental Sys., Inc.*, 2d Dist. Montgomery Nos. 23513, 23644 & 23723, 2010-Ohio-5523, ¶ 27. Each averment of a pleading must be

"simple, concise, and direct. No technical forms of pleading or motions are required." Civ.R. 8(E)(1). Pleadings are to be construed as to do substantial justice. Civ.R. 8(F).

*Springfield v. Palco Invest. Co.*, 2013-Ohio-2348, 992 N.E.2d 1194, ¶ 34 (2d Dist.).

**{¶ 90}** "Civ. R. 26(B)(1) provides that '[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action * * *.' " *Marcum v. Miami Valley Hospital*, 2015-Ohio-1582, 32 N.E.3d 974, ¶ 8 (2d Dist.). "Civ. R. 26(B)(1) further provides that '[i]t is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.' " *Id.*

**{¶ 91}** Finally, as this Court has previously noted:

A court calculates reasonable attorney's fees by first calculating the "lodestar," "the number of hours reasonably expended on the case times an hourly fee." *Bittner v. Tri–County Toyota, Inc.*, 58 Ohio St.3d 143, 145, 569 N.E.2d 464 (1991). In this calculation, the court must exclude "any hours that were unreasonably expended, e.g., hours that were redundant, unnecessary or excessive in relationship to the work done." (Citation omitted.) *Miller v. Grimsley*, 197 Ohio App.3d 167, 2011–Ohio–6049, 966 N.E.2d 932, ¶ 14 (10th Dist.). Then the court may modify the lodestar by applying the factors listed in Prof.Cond.R. 1.5, *Bittner* at 145, one of which is "the amount involved and the results obtained," Prof.Cond.R. 1.5(a)(4). Still, " '[a] "reasonable" fee must be related to the work reasonably expended on the case and not merely to the amount of the judgment

awarded.' " *Miller* at ¶ 16, quoting *Roth Produce Co. v. Scartz*, 10th Dist. Franklin No. 01AP–480, 2001 WL 1654555 (Dec. 27, 2001). *Spring Hill Townhomes v. Pounds*, 2d Dist. Montgomery No. 25887, 2014-Ohio-1980, ¶ 18.

**{¶ 92}** As the trial court noted, counsel for the Village stipulated to the reasonableness of the timekeepers' rates at Pepper's firm.   We cannot conclude, as the Village asserts, that Trails End's complaint failed to provide sufficient notice to the Village, or that Trail's End's discovery was limited by the allegations in the complaint; as the trial court noted, pursuant to Civ.R. 26, parties are entitled to broad discovery. We agree with the trial court's determination that simply "because the underlying litigation ended before these facts could be discovered through interrogatories and deposition, does not preclude Defendants from pursuing these facts as a defense to the instant matter." The court noted Pepper's testimony that he and his staff "conducted more work than that which was billed to his client," that no invoice was duplicative, and that no particular time billed was excessive.   We agree with the trial court that counsel for Trails End achieved an excellent result, and that Trails End "arguably had more at stake than $2,500.00 having felt harassed by [the Village]."   The court determined the lodestar amount of $24,172.26, and then properly considered, pursuant to Prof. Cond. R. 1.5, if the lodestar amount was subject to adjustment.   For the foregoing reasons, we conclude that an abuse of discretion is not established, and that an award of $24,172.26 was reasonable and necessary.   The Village's fifth assignment of error is overruled.

**{¶ 93}** Finally, the Village's first assigned error is as follows:

THE    COURT    BELOW    ERRED    IN    OVERRULING

PLAINTIFF/APPELLANT'S MOTION FOR SUMMARY JUDGMENT FILED IN THIS MATTER ON OCTOBER 30, 2012 AND CONSIDERING [TRAILS END'S] COMPLAINT AS AN ATTEMPT TO APPEAL OR HAVING A MOTIVE TO APPEAL ACTIONS BY THE STATE FIRE MARSHALL AND THE BOARD OF ZONING APPEALS.

**{¶ 94}** The Village mischaracterizes the record; the trial court did not rule upon the Village's motion for summary judgment, as the Village noted in its brief following the damages hearing. The Village dismissed its case while its motion was pending, and there is no judgment for this Court to review. The trial court's classification of Trails End's dismissed complaint as an appeal is irrelevant to the issue that was before the court, namely Trails End's entitlement to an award of attorney fees based upon the frivolous conduct of the Village. The Village's first assignment of error is overruled.

**{¶ 95}** Having overruled each of the Village's assigned errors, the judgment of the trial court is affirmed.

. . . . . . . . . .

FROELICH, P.J. and WELBAUM, J., concur.

Copies mailed to:

Ronald D. Keener
Timothy G. Pepper
Valerie M. Talkers
Hon. Gregory F. Singer